**UNITED STATES of America,**
Appellee,

v.

**Jose Torres CRUZ et al., Appellants.**

**Nos. 587, 588, Dockets 73–2654, 73–2655.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 21, 1973.

Decided Feb. 28, 1974.

Certiorari Denied June 3, 1974.
See 94 S.Ct. 2649.

Randolph C. Roeder, Asst. U. S. Atty.,
D.Conn., Bridgeport, Conn. (Stewart H.

Jones, U. S. Atty., D.Conn., Bridgeport, Conn., on the brief), for appellee.

Mark Lemle Amsterdam, Center for Constitutional Rights, New York City, for appellants.

Before FRIENDLY, HAYS and OAKES, Circuit Judges.

HAYS, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the District of Connecticut convicting both appellants on a one-count indictment charging possession of unregistered firearms, "Molotov cocktails," [1] in violation of the National Firearms Act, 26 U.S.C. § 5861(d) (1970). Appellants were sentenced to terms of imprisonment of eighteen months to be suspended after the first six months.

The proceeding appealed herein was the second trial on these indictments. At the first trial the appellants were both convicted by a jury and sentenced to terms of five years. They appealed, claiming that certain statements made by the trial judge were prejudicial. We affirmed, 455 F.2d 184 (2d Cir.), and the Supreme Court denied certiorari, 406 U.S. 918, 92 S.Ct. 1769, 32 L.Ed.2d 117 (1972). The appellants thereafter moved the district court for a new trial claiming newly discovered evidence of their innocence. The evidence consisted of four eye-witnesses who would testify that they were so situated that they were able to see the events charged in the indictments, and that they did not see the appellants throw Molotov cocktails. Judge Newman ordered a new trial. It is from their conviction at the second trial that appellants now appeal.

## I. District Court Proceeding.

### A. The Government's Case.

Four of the government's witnesses were Hartford, Connecticut, police offi-

cers.[2] Each officer testified that he was part of a special unit assigned the mission of isolating and arresting snipers during civil disorders which took place in Hartford on June 20, 1969. At about 11:00 P.M. on June 20, the four officers were riding in an unmarked police car following about 100 feet behind a marked police cruiser. As the marked car went through an intersection, two Molotov cocktails were thrown at it, landing behind it. The unmarked car came up to the intersection and two officers leaped out and arrested the appellants. All four officers identified the appellants as the persons who threw the Molotov cocktails. Two officers, Hopkins and Telesky, testified that they did not take their eyes off the appellants from the time they saw them throw the fire bombs to the time they arrested them.

The government also introduced, over the appellants' objection, a certificate of non-registration from the Bureau of Alcohol and Firearms, showing that the custodian of Bureau records had searched Bureau files, and that there was no evidence of the Molotov cocktails in question having ever been registered.

### B. The Defense Case.

The defense called two witnesses. Leroy Carter was in his butcher store directly across from the place where the incident took place on June 20. He testified that although he was observing the street at 11:00, he did not see any fire bombs being thrown. Evelyn Rodriguez was a tenant in a building facing the intersection in which the appellants were apprehended, the same building in which the appellants lived. She testified that she watched Torres's family leave their car and go into their house, and that Torres drove the car behind the building. When he returned to the street on foot, she saw Torres and Vega being

---

1. A "Molotov cocktail" is defined as a "crude hand grenade made of a bottle filled with a flammable liquid (as gasoline) and fitted with a wick or saturated rag taped to the bottom and ignited at the moment of hurling." Webster's Third New International Dictionary 1456 (3d ed. 1961).

2. The appellants make much of the fact that there were contradictions in the testimony of the officers. These contradictions go to the weight of their testimony. Evaluating the weight of conflicting testimony was properly in the province of the jury.

arrested. She did not see them throw Molotov cocktails.

## II. Claims of Error.

### A. *Section 5845(f)*.

Appellants claim that the indictment on which they were convicted does not state an offense because Molotov cocktails are not within the Firearms Act.

█ One of the types of weapon coming within the registration provision of the Act, 26 U.S.C. § 5841 (1970), is the "destructive device," which is defined as follows:

> "The term 'destructive device' means (1) any explosive, *incendiary*, or poison gas (A) *bomb*, (B) *grenade* . . . or (F) *similar device* . . . ." 26 U.S.C. § 5845(f) (1970) (emphasis added).

Appellants argue that a Molotov cocktail is not an incendiary bomb, grenade or similar device. We find this argument to be without merit. If we are to give section 5845(f) the ordinary meaning of its language, a Molotov cocktail must come within its scope. In so holding, we follow the explicit examples of the Fifth Circuit in United States v. Ross, 458 F.2d 1144 (5th Cir.), cert. denied, 409 U.S. 868, 93 S.Ct. 167, 34 L.Ed.2d 118 (1972), and of Judge Timbers in United States v. Davis, 313 F.Supp. 710 (D.Conn.1970), and this court's suggestion in United States v. Posnjak, 457 F.2d 1110, 1119 n. 10 (2d Cir. 1972).

█ Appellants further contend that the language in the indictment charging them with possessing "destructive devices known as incendiary bombs in the form of 'Molotov cocktails'" requires the Government to prove that Molotov cocktails are incendiary bombs, rather than "grenades" or "similar devices." We disagree. The indictment adequately charged possession of a destructive device under § 5845(f), and its failure to recite each of the possible statutory categories does not restrict its proof that Molotov cocktails are within the proscription of the Act.

█ The appellants refer to the legislative history of the Firearms Act. They contend that Molotov cocktails are in none of the three categories of weapons that were intended to be regulated by Congress: weapons subject to interstate commercial sale, heavy military weapons of great destructive capability, and objectively destructive devices. While we express no opinion as to whether these categories exhaust the possibilities under the Act, it is clear that Molotov cocktails are objectively destructive. We recognized in United States v. Posnjak, supra, that the legislative history of the Firearms Act indicates that it requires registration of objectively destructive devices, devices inherently prone to abuse and for which there are no legitimate industrial uses. The Act thus clearly encompasses Molotov cocktails, since they have no use besides destruction. We are not persuaded by appellants' disingenuous argument that Molotov cocktails are structurally congruent with lanterns or with paint cans covered with rags, and that they are therefore not objectively destructive. As we observed in *Posnjak*, a Molotov cocktail is "a crude but well-known variety of incendiary bomb," 457 F.2d at 1119; it could not be mistaken for a lantern or paint can. And we do not accept appellants' suggestion that Congress intended section 5845(f) only to require registration of such rare devices as white phosphorous bombs, while overlooking the common garden species of Molotov cocktail.

█ Appellants also point to acts of Congress besides the Firearms Act in support of their position. For example, they make much of the fact that section 209 of the District of Columbia Court Reorganization Act of 1970, 84 Stat. 473, explicitly prohibits possession of Molotov cocktails within the District. See D.C. Code § 22–3215a(a) (Supp.IV 1971). From this fact, they infer that Congress was knowingly filling a gap in the Firearms Act, that is, that the Act was not meant to require registration of Molotov cocktails. We disagree. Section 209 is not limited to Molotov cock-

tails, but proscribes the manufacture, transfer, use, possession or transportation of "any device . . . designed to explode or produce uncontained combustion, with the intent that the same may be used unlawfully against any person or property." Virtually all forms of explosive devices included within section 5845(f) thus also fall within the reach of section 209. Congress apparently desired to legislate against Molotov cocktails and other explosive devices directly under the District of Columbia power where it was available, but chose to resort to registration under the taxing power for nation-wide applicability.

B. *Other Claims.*

█ Appellants claim that requiring registration of Molotov cocktails violates the self-incrimination clause of the Fifth Amendment. Since we have determined that a Molotov cocktail is an objectively destructive device, the registration requirement poses no self-incrimination problems. United States v. Freed, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971).

█ The appellants insist that the certificate of non-registration was inadmissible hearsay, and that its admission denied them their Sixth Amendment right of confrontation. But it is abundantly clear that Rule 27 of the Federal Rules of Criminal Procedure, and Rule 44(b) of the Federal Rules of Civil Procedure create an exception to the hearsay rule for a statement that a diligent search of a record discloses no entry of a specified tenor. It is also clear that the Sixth Amendment does not limit the exceptions to the hearsay rule to those existing in 1791. The justification for a new exception is particularly evident in a case like the present, where the hearsay is reliable, and where the practical need for it is great.

Finally, we find no merit in the appellants' contentions that there was not sufficient evidence to go to the jury, that the government failed to disclose the contents of the pre-sentence report from the first trial in violation of the rule in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and that the appellants were not allowed sufficient questions in the voir dire of their veniremen.

Affirmed.