**UNITED STATES of America, Appellee,**

v.

**Simontov YAKOBOV, a/k/a "Yakov Yakubov," Defendant-Appellant.**

**No. 1288, Docket 82–1452.**

United States Court of Appeals, Second Circuit.

Argued March 17, 1983.

Decided June 30, 1983.

Joan M. Azrack, Asst. U.S. Atty., Brooklyn, N.Y. (Raymond J. Dearie, U.S. Atty., E.D.N.Y., Allyne R. Ross, Asst. U.S. Atty., Brooklyn, N.Y., on brief), for appellee.

Henriette D. Hoffman, The Legal Aid Society, Federal Defender Services Unit, New York City, for defendant-appellant.

Before MANSFIELD, MESKILL and KEARSE, Circuit Judges.

KEARSE, Circuit Judge:

Defendant Simontov Yakobov, a/k/a "Yakov Yakubov," appeals from a judgment entered in the United States District Court for the Eastern District of New York, after a jury trial before I. Leo Glasser, *Judge,* convicting him of conspiring to engage unlawfully in the business of dealing in firearms, in violation of 18 U.S.C. § 371 (1976) (count 1); of engaging unlawfully in the business of dealing in firearms, in violation of 18 U.S.C. §§ 922(a)(1) and 2 (1976) (count 2); and of unlawfully transporting firearms into New York, in violation of 18 U.S.C. §§ 922(a)(3) and 2 (1976) (count 3).[1] Yakobov contends that he is entitled to a new trial principally because the trial court erroneously received in evidence a document that was inadmissible under the Federal Rules of Evidence. He contends also that the government failed to prove an essential element of the crime charged in count 3 of the indictment and that his conviction under that count should be reversed and that count dismissed. We agree that the evidence on count 3 was insufficient and that that count must be dismissed, and we conclude that a new trial is required on counts 1 and 2.

## I. BACKGROUND

Section 922(a)(1) of 18 U.S.C. makes it unlawful for a person who is not licensed by the federal government to engage in the business of, *inter alia,* dealing in firearms. Section 922(a)(3) makes it unlawful for an unlicensed person to receive in, or transport into, the state where he resides a firearm obtained by him outside that state. The present appeal focuses on the government's proof (1) that Yakobov was unlicensed, and (2) that he was a resident of the State of New York.

The government's evidence as to Yakobov's involvement in firearms transactions consisted principally of the testimony of two undercover New York City policemen, Detectives Rigoberto Garzona and Michael Hahn. On February 25, 1982, Garzona, posing as a purchaser of firearms, met Yakobov at the latter's fruit store on Kings Highway in Brooklyn, New York, and purchased a gun from Yakobov. On March 2, 1982, Garzona and other undercover officers met with Yakobov and others, including one David Cooper, at Yakobov's store to arrange for the purchase of guns in Florida. On that day, Cooper and Garzona flew to Jacksonville, Florida, where Cooper, using a forged Florida driver's license, purchased five guns for Garzona. They returned to New York with the guns on the following day.[2] On March 24, 1982, Garzona and Hahn met with Yakobov and Cooper at Yakobov's store and purchased five additional guns from Yakobov.

The government's proof that Yakobov was not licensed by the federal government to deal in firearms consisted solely of two documents prepared by the United States Treasury Department's Bureau of Alcohol, Tobacco and Firearms ("ATF"), to wit, (1) a statement signed by ATF Regional Regulatory Administrator Donald C. MacVean, describing one Frank W. Hall as custodian of ATF licensing records for several states including New York, and (2) a statement by Hall (hereinafter "ATF Certificate"), in his custodial capacity, to the effect that his diligent search of ATF records had revealed no firearms license for Yakobov. Hall's statement read in pertinent part as follows:

---

1. Yakobov was sentenced to concurrent two-year prison terms on counts 1 and 2, and to a three-year term of probation on count 3, to run consecutively to the prison term.

2. Cooper was indicted with Yakobov on counts 1–3 of the indictment, and on other counts as well, but absconded before trial.

I do hereby ... certify that after a diligent search of the records under my custody and control that pertain to firearms licenses, the search revealed no evidence of the receipt of an application for a firearms license or the issuance of such a license on behalf of

Jakubov [*sic*], Simantov [*sic*]
DOB: 9/9/1950
1590 West 8th Street,
Brooklyn, New York.

The ATF Certificate was admitted under Fed.R.Evid. 803(8), over Yakobov's objection, on the basis of the testimony of ATF special agent John A. O'Brien that a records search had been made. Neither MacVean nor Hall testified.

The government presented no direct evidence as to Yakobov's residence. We discuss the circumstantial evidence in Part II. C. below.

The jury convicted Yakobov on all three counts with which he was charged. This appeal followed.

## II. DISCUSSION

Yakobov's principal argument on appeal is that the ATF Certificate was not admissible under Fed.R.Evid. 803(8) or any other exception to the hearsay rule. The government argues that the document was admissible under Fed.R.Evid. 803(10). For the reasons below we conclude that the ATF Certificate was improperly received in evidence because it was not admissible under Fed.R.Evid. 803(8) and did not meet the trustworthiness requirements of Rule 803(10). Yakobov therefore is entitled to a new trial. We also conclude that Yakobov's conviction on count 3 must be reversed, and that count dismissed, because the government failed to prove beyond a reasonable doubt that Yakobov resided in New York, an essential element of the crime charged under 18 U.S.C. § 922(a)(3).

### A.  *Fed.R.Evid. 803(10)*

The basis for the government's proffer of the ATF Certificate at trial is not entirely clear, and although only Fed.R.Evid. 803(8) was mentioned at trial, on appeal the government relies on Fed.R.Evid. 803(10) to support the certificate's admission.[3] We conclude that Rule 803(10) did not authorize receipt of the document in evidence.

Rule 803(10) provides as follows:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

(10) *Absence of public record or entry.* To prove the absence of a record, report, statement, or data compilation, in any form, or the nonoccurrence or nonexistence of a matter of which a record, report, statement, or data compilation, in any form, was regularly made and preserved by a public office or agency, evi-

---

**3.** The colloquy preceding the receipt in evidence of the ATF Certificate, identified as Government's Exhibit 15, was as follows:

> Mr. Summers [Assistant United States Attorney]: Your Honor, I offer Government's Exhibit 15 in evidence.
> The Court: Mr. Freeman? Show it to Mr. Freeman.
> Mr. Freeman [Counsel for Yakobov]: I have seen it, your Honor. May I ask under which section it is being offered?
> Mr. Summers: It is being offered under the Public Records [ex]ception Judge.
> Mr. Freeman: Objection.
> . . . .
> The Court: Overruled. 8038 [*sic*], is it?
> Mr. Summers: I think it is, Judge. I don't have it in front of me.
> The Court: Overruled.

(Trial transcript 229–30.) This colloquy strongly suggests that Rule 803(8), which is entitled "Public records and reports," was the basis for the proffer. Nonetheless, the government ordinarily is not barred from seeking affirmance on the basis of an exception to the hearsay rule other than that specified at trial, provided that the alternative basis for admission finds support in the record. *United States v. Lieberman,* 637 F.2d 95, 103 n. 11 (2d Cir.1980). *But see* Part B *infra,* discussing Yakobov's contention as to the preclusive effect of Rule 803(8).

The government's apparent abandonment of its earlier reliance on Rule 803(8) as a basis for admission is well advised. Assuming that the ATF Certificate constituted the type of statement or report envisioned by that Rule, it would not be admissible against the defendant in a criminal proceeding. *United States v. Oates,* 560 F.2d 45 (2d Cir.1977).

dence in the form of a certification in accordance with rule 902, or testimony, that diligent search failed to disclose the record, report, statement, or data compilation, or entry.

An essential requirement of Rule 803(10) is that evidence of the absence of a record be the result of a "diligent search." As we stated in *United States v. Robinson,* 544 F.2d 110 (2d Cir.1976), *cert. denied,* 434 U.S. 1050, 98 S.Ct. 901, 54 L.Ed.2d 803 (1978):

> Diligence is the standard set by Rule 803(10), ... and it is a good one. It insures that evidence of this kind will be reliable, and reliability is the foundation upon which all exceptions to the hearsay rule are built.

*Id.* at 115 (footnote omitted). The diligence requirement is one of substance, not form. It is not satisfied merely by a ritual incantation that the certificate results from a "diligent search." *See United States v. Harris,* 551 F.2d 621, 622 (5th Cir.) (per curiam) (absence of that phrase does not prevent admission under Rule 803(10)) *cert. denied,* 434 U.S. 836, 98 S.Ct. 125, 54 L.Ed.2d 98 (1977). Rather, "if, in a particular instance, the circumstances indicate a lack of trustworthiness, the evidence should be excluded," and the result of "a search that has been less than diligent is inadmissible to prove the absence of a record." *United States v. Robinson, supra,* 544 F.2d at 115.

In the present case, notwithstanding the ATF Certificate's recitation of "a diligent search," the face of the document itself suggests that the search conducted to determine whether Yakobov had applied for or obtained a license to deal in firearms was not diligent. The ATF Certificate states that Hall searched for a license or application for "Jakubov, Simantov." There is no indication that any search was made under the name "Yakobov" or "Yakubov." The use instead of misspelled versions of both Yakobov's first and last names hardly suggests diligence, and the spelling of Yakobov's last name with an initial "J" seems likely to have prevented the discovery of any license or application for Yakobov, if one existed. "It hardly requires extended discussion to demonstrate that a casual or partial search cannot justify the conclusion that there was no record," *United States v. Robinson, supra,* 544 F.2d at 115, and we conclude that the ATF Certificate was not admissible under Rule 803(10).

Since there was no other evidence that Yakobov was unlicensed, we vacate Yakobov's conviction on counts 1 and 2 and remand for a new trial of those counts.

### B. *Effect of Rule 803(8)*

■ Because Yakobov is to be retried on counts 1 and 2 and the government may well proffer a new certificate reflecting that a diligent search has been made as required by Rule 803(10), we address also Yakobov's contention that Rule 803(8) forecloses the receipt of such a certificate under Rule 803(10).[4] Yakobov's argument is

---

4. We do not, however, purport to resolve the constitutional objection that Yakobov may be expected to assert on remand, *i.e.,* that admission of an ATF certificate will violate his Sixth Amendment right of confrontation. In *United States v. Cruz,* 492 F.2d 217 (2d Cir.), *cert. denied,* 417 U.S. 935, 94 S.Ct. 2649, 41 L.Ed.2d 239 (1974), we ruled that the admission of a written certification of nonregistration of a destructive device did not abridge the defendant's confrontation rights, *id.* at 220, and we note that the effect, if any, of the Supreme Court's decision in *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), on the precedential value of *Cruz* has not been determined. In *Roberts,* the Court stated that "[i]n the usual case," the Confrontation Clause bars introduction of hearsay evidence against a criminal defendant unless the prosecutor establishes that the declarant is unavailable. *Id.* at 65, 100 S.Ct. at 2538. In a footnote to this observation, the Court stated that

> [a] demonstration of unavailability, however, is not always required. In *Dutton v. Evans,* 400 U.S. 74 [91 S.Ct. 210, 27 L.Ed.2d 213] (1970), for example, the Court found the utility of trial confrontation so remote that it did not require the prosecution to produce a seemingly available witness.

*Id.* n. 7. In *Dutton,* the plurality opinion of Justice Stewart stated that the possibility that cross-examination of the declarant might have revealed that the hearsay statement was unreliable "was wholly unreal." 400 U.S. at 89, 91 S.Ct. at 220. The concurring opinion of Justice Harlan suggested that the Confrontation Clause should not be interpreted to require a

based on our statements in *United States v. Oates,* 560 F.2d 45 (2d Cir.1977), that Rule 803(8) precluded the receipt of the documents there proffered under any exception to the hearsay rule. Although our language was indeed sufficiently broad to encompass the blanket foreclosure contended for by Yakobov, we regard any implicit application of that language to Rule 803(10) as *obiter,* and we believe that *Oates* should not be applied to exclude on remand a certificate that meets the requirements of Rule 803(10).

Rule 803(8) provides as follows:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

(8) *Public records and reports.* Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of

information or other circumstances indicate lack of trustworthiness.

*Oates* involved the admission of a report and worksheet of a U.S. Customs Service chemist whose analysis had revealed that a substance seized from the defendant's companion was heroin. The chemist himself did not testify at trial, and the report and worksheet were offered in evidence under Rule 803(8), as well as under Rule 803(6) (business records exception) and Rule 803(24) (catchall exception for trustworthy hearsay). 560 F.2d at 64. We ruled that Customs Service chemists were "law enforcement personnel" within the contemplation of Rule 803(8)(B), that the chemist's report and worksheet constituted "factual findings resulting from an investigation made pursuant to authority granted by law" under Rule 803(8)(C), and that Rule 803(8) therefore did not authorize admission of the documents in a criminal proceeding unless they were offered against the government.

After an extensive analysis of the legislative history of Rule 803(8)(B) and (C), *see* 560 F.2d at 69–84, we held also that the curtailments in Rule 803(8)(B) and (C) of admission of such reports against a criminal defendant extended beyond Rule 803(8) itself and precluded admission under Rule 803(6) as well.[5] We stated as follows:

---

showing of unavailability "where production [of the declarant] would be unduly inconvenient and of small utility to a defendant." *Id.* at 96, 91 S.Ct. at 223 (concurring in the result). Justice Harlan stated that he was not content to believe

that the Confrontation Clause was designed to establish a preferential rule, requiring the prosecutor to avoid the use of hearsay where it is reasonably possible for him to do so—in other words, to produce available witnesses. . . .

A rule requiring production of available witnesses would significantly curtail development of the law of evidence to eliminate the necessity for production of declarants where production would be unduly inconvenient and of small utility to a defendant. Examples which come to mind are the Business Records Act, 28 U.S.C. § 1732–1733, and the exceptions to the hearsay rule for official statements, learned treatises, and trade reports. See, *e.g.,* Uniform Rules of Evidence

63(15), 63(30), 63(31); *Gilstrap v. United States,* 389 F.2d 6 (CA5 1968) (business records); *Kay v. United States,* 255 F.2d 476 (CA4 1958) (laboratory analysis). If the hearsay exception involved in a given case is such as to commend itself to reasonable men, production of the declarant is likely to be difficult, unavailing, or pointless.

*Id.* at 95–96, 91 S.Ct. at 223.

We have no way of knowing, of course, precisely what a new ATF certificate produced by the government on remand would disclose, and it will fall to the trial judge in the first instance to assess whether cross-examination of the maker of the certificate would be "pointless" or its value to Yakobov "remote."

5. The government had not pursued its Rule 803(24) argument on appeal. *See* 560 F.2d at 72 & n. 30. We made clear, however, that our reasoning was equally applicable to Rule 803(24). *See* 560 F.2d at 78.

[T]here being no apparent reason why Congress would tolerate the admission of evaluative and law enforcement reports by use of some other exception to the hearsay rule (for example, the "business records" exception of FRE 803(6) or the "open-ended" exceptions of FRE 803(24) or 804(b)(5)), it simply makes no sense to surmise that Congress ever intended that these records could be admissible against a defendant in a criminal case under *any* of the Federal Rules of Evidence's exceptions to the hearsay rule.

560 F.2d at 78 (emphasis in original). We concluded:

Inasmuch as the chemist's documents here can be characterized as governmental reports which set forth matters observed by law enforcement personnel or which set forth factual findings resulting from an authorized investigation, they were incapable of qualifying under any of the exceptions to the hearsay rule specified in FRE 803 and 804.

*Id.* at 84.

Notwithstanding the breadth of this language,[6] it is obvious that not all of the hearsay exceptions provided by Rules 803 and 804 were at issue in *Oates.* Rule 803(10) was not, nor could it have been, since the proffered documents were unrelated to any *absence* of public record or entry. We thus regard the *Oates* language as dictum to the extent that it encompassed Rule 803(10), and we note that although the broad language has found support in some of our subsequent cases, *e.g., United States v. Quinto,* 582 F.2d 224, 235 (2d Cir.1978); *United States v. Check,* 582 F.2d 668, 681 n. 40 (2d Cir.1978); *United States v. Ruffin,* 575 F.2d 346, 356 (2d Cir.1978), it has not to our knowledge been applied in a case in which Rule 803(10) was at issue.

Several factors lead us to the conclusion that *Oates* should not be extended to Rule 803(10). First, there is a significant difference between the nature of a statement envisioned by Rule 803(8) and that of a statement envisioned by Rule 803(10). Rule 803(8) deals with statements setting forth "matters observed" and "findings of fact resulting from an investigation." The contents of these statements normally are direct affirmative assertions as to elements of the offense charged. In *Oates,* for example, the report and worksheet stated that the substance seized was heroin; in *United States v. Davis,* 571 F.2d 1354, 1356 (5th Cir.1978), the reports stated dates and places of purchases of a firearm. The assertion made by a statement envisaged by Rule 803(10) is normally a step removed from any element of the offense charged: it is not a statement that the defendant has failed to perform a given act or that he does not enjoy a certain status. Rather it is a statement that, among the records regularly kept by a public office or agency, a certain record, entry, report, etc., has not been found. This type of statement is an inferential step away from any element of the offense charged. It is not a finding of the material fact but is an assertion from which a finding of such a fact may be made.

Further, though a statement envisioned by Rule 803(8) may have evaluative aspects—for example, a chemist's analysis of a substance as heroin, or a policeman's interpretation of a suspect's actions as checking for surveillance—a statement envisioned by Rule 803(10) has none. The latter statement merely states that a certain datum has not been located in records regularly made and preserved. Assuming there are sufficient indicia of the trustworthiness of such a statement to satisfy Rule 803(10)'s requirement of a diligent search, there is not the same need to cross-examine the maker of the statement as might exist with respect to a statement envisioned by Rule 803(8). As one court has put it, in upholding the admission of an ATF certificate,

---

6. We note in passing that the broader implications of *Oates* have been strongly criticized. *See, e.g.,* 4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 803(8)[04] (1981); *United States v. Hernandez-Rojas,* 617 F.2d 533, 534–35 (9th Cir.), *cert. denied,* 449 U.S. 864, 101 S.Ct. 170, 66 L.Ed.2d 81 (1980); *United States v. Sawyer,* 607 F.2d 1190, 1193 (7th Cir.1979), *cert. denied,* 445 U.S. 943, 100 S.Ct. 1338, 63 L.Ed.2d 776 (1980).

The exception to the hearsay rule embodied in Rule 803(10) is justified because evidence admitted under it is in its nature highly reliable, i.e., the "yes or no" of whether a license has been issued; because the records from which the evidence comes are open to the public thereby increasing the probability that any errors will be found and corrected; and because there is a substantial need for such evidence. *See generally* 5 Wigmore on Evidence §§ 1631–32, 1678(7) (Chadbourn rev., 1974).

*United States v. Harris, supra,* 551 F.2d at 622; *accord United States v. Neff,* 615 F.2d 1235, 1241–42 & n. 7 (9th Cir.) (computerized IRS records to show absence of tax returns), *cert. denied,* 447 U.S. 925, 100 S.Ct. 3018, 65 L.Ed.2d 1117 (1980); *United States v. Cepeda Penes,* 577 F.2d 754, 761 (1st Cir.1978) (same).

We have examined the legislative history of the Federal Rules of Evidence and have found no indication that Congress intended, when it excluded law enforcement reports offered against a criminal defendant from the ambit of Rule 803(8)'s hearsay exception, to exclude evidence of the simple absence of a report from the ambit of Rule 803(10). Given the differences discussed above, we conclude that Rule 803(8) would not preclude admission of a certificate meeting the requirements of Rule 803(10).

### C. *Sufficiency of the Evidence as to Residence*

■ Count 3 of the indictment charged Yakobov with having violated 18 U.S.C. § 922(a)(3), which makes it unlawful for an unlicensed person to receive in or transport into the state where he resides a firearm he has obtained outside the state. The indictment alleged that Yakobov violated that provision by causing guns to be transported from Florida to New York. Accordingly, the government was obligated to prove, beyond a reasonable doubt, that Yakobov resided in the State of New York.[7] *See Davis v. United States,* 160 U.S. 469, 487, 16 S.Ct. 353, 358, 40 L.Ed. 499 (1895).

Although there was considerable evidence that the undercover agents met or talked with Yakobov in New York on several occasions, all meetings were held at the fruit store owned by Yakobov or at restaurants, and all telephone calls were to the store. There was no evidence as to where Yakobov resided.[8] The government argues that the jury could find that Yakobov resided in New York because of his ownership of a New York business and because it could infer that his presence in the store at 7:00 a.m. on one morning, March 2, and at 7:30 p.m. on one evening, March 23, meant that he worked long hours.

■ Even viewing the record in the light most favorable to the government and drawing all reasonable favorable inferences, *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), we cannot conclude that the evidence relied on by the government was sufficient to prove beyond a reasonable doubt that Yakobov resided in New York. Since the government failed to prove an essential element of the offense charged in count 3, we reverse the conviction on that count. *See Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

### CONCLUSION

The judgment of conviction as to count 3 is reversed and count 3 is dismissed. The judgment as to counts 1 and 2 is vacated and those counts are remanded for a new trial.

---

**7.** The government's contention that Yakobov waived this argument as to the sufficiency of the evidence has no merit. *See United States v. Gjurashaj,* 706 F.2d 395, 399 (2d Cir.1983).

**8.** We find unpersuasive the government's half-hearted attempt to bolster the record as to Yakobov's residence by its reference to the ATF Certificate as "[p]ertinent." (United States brief on appeal at 13 n. 8.) That document merely reveals that Hall believed that the address of 1590 West 8th Street, Brooklyn, New York—whether a residential or a business address is not specified—belonged to a person named Simantov Jakubov.