UNITED STATES of America,

v.

**Alfredo GALLEGO, et al., Defendants.**

No. S1 95 Cr. 284 (LAK).

United States District Court, S.D. New York.

Jan. 16, 1996.

Peter K. Vigeland, Robin E. Abrams, Assistant United States Attorneys, Mary Jo White, United States Attorney, for U.S.

Philip R. Edelbaum, New York City, for Defendant Alfredo Gallego.

Andrew G. Patel, New York City, for Defendant Steven Martinez.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This order disposes of motions *in limine* filed by the government and by defendant George Gallego, the latter of which has been joined in by the remaining defendants, to the extent not previously ruled upon in open court. It rules also on belated motions made on the eve of trial by new counsel for defendant Steven Martinez.

### The Government's Motion

#### The George Gallego Allocution

■ On January 21, 1993, the driver of a Postal Service truck was killed in connection with a robbery. Defendant Alfredo Gallego pleaded guilty to the robbery and to conspiracy to commit the robbery, among other charges, and currently is serving his sentence on those convictions. The superseding indictment in this case charges Alfredo Gallego,[1] Steven Martinez, and George Gallego, Alfredo's brother, with conspiracy to murder and the murder of the driver.[2] On December 18, 1995, George Gallego pleaded guilty before me to the conspiracy to murder charge. In relevant part, he allocuted as follows:

"Q Have you received a copy of the [ ] Indictment No. S1 95 Crim. 284? A Yes, I have.

"Q And do you understand that you are charged in Count One with conspiracy to commit murder in violation of 18 U.S.Code, Section 1117? A Yes.

\*　　\*　　\*

---

1. The Court previously has ruled on Alfredo Gallego's double jeopardy challenge to this indictment. *United States v. Gallego,* 907 F.Supp. 735 (S.D.N.Y.1995).

2. Martinez and George Gallego were indicted also on robbery and conspiracy to commit robbery charges.

"Q Now, sir, did you, as charged in Count One of the indictment, during all or part of the period commencing in or about September 1992 until on or about January 21, 1993, in the Southern District of New York, which includes, among other counties, New York and Bronx counties, and elsewhere, conspire and agree with [ ] others, unlawfully, willfully and knowingly to violate Sections 1111 and 1114 of Title 18 of the United States Code?

\* \* \*

"A Yes.

"Q Mr. Gallego, did you participate in the planning of the robbery referred to in Count One of the [ ] indictment? A Yes, I did.

"Q And did you make a handgun equipped with a silencer available to the other participants? A Yes, I did.

"Q And did you understand, or was it implicit in your actions that, depending on what happened, the driver of the postal truck in question could be killed? A Yes.

"Q Was it your understanding that that individual would be killed if it was necessary to facilitate the robbery of the post office truck? A Yes.

\* \* \*

"Q Mr. Gallego, is that correct, that the silencer was made available in order to further the scheme to rob the post office truck? A Yes."

The government moves for an *in limine* determination that the quoted portion of the allocution is admissible at trial as a declaration against penal interest under FED.R.EVID. 804(b)(3) in light of the fact that George Gallego has taken the position, through counsel, that he would invoke his privilege against self-incrimination if called as a witness. It argues that the allocution is evidence of the existence of the conspiracy to commit murder and would not prejudice defendants improperly.

The defendants acknowledge that George Gallego would invoke his privilege and appear to concede that it is unnecessary for the government to have him do so in the presence in the Court. In consequence, he is unavailable within the meaning of Rule 804(a)(1). *E.g.*, *United States v. Beltempo*, 675 F.2d 472, 480 (2d Cir.), *cert. denied*, 457 U.S. 1135, 102 S.Ct. 2963, 73 L.Ed.2d 1353 (1982); *see also United States v. Williams*, 927 F.2d 95, 98–99 (2d Cir.), *cert. denied*, 502 U.S. 911, 112 S.Ct. 307, 116 L.Ed.2d 250 (1991). In consequence, the sole question before the Court is whether George Gallego's allocution is a statement against penal interest and otherwise admissible in light of the Confrontation Clause and FED.R.EVID. 403. The defendants' fundamental concern, putting aside the niceties, is that the admission that a conspiracy to murder existed, whatever its impact in another case, is overwhelmingly prejudicial here in light of the facts that (a) the declarant is defendant Alfredo Gallego's brother, and (b) Alfredo evidently was apprehended near the crime scene in close temporal proximity to the crime.

In *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the Supreme Court held that "[t]he Confrontation Clause operates in two separate ways to restrict the range of admissible hearsay." *Id.* at 65, 100 S.Ct. at 2538. Given "the Framers' preference for face-to-face accusation," it "establishes a rule of necessity"—the prosecution must establish the unavailability of the declarant. *Id.* Even if the declarant is unavailable, the out-of-court declaration is admissible "only if it bears adequate 'indicia of reliability.'" *Id.* at 66, 100 S.Ct. at 2539. Reliability is inferred if the evidence "falls within a firmly rooted hearsay exception." *Id.* The declaration otherwise will be excluded, "at least absent a showing of particularized guarantees of trustworthiness." *Id.* (footnote omitted). Hence, as George Gallego concededly is unavailable, the issue is whether the allocution falls within a well-established hearsay exception or, alternatively, carries "particularized guarantees of trustworthiness."

The Second Circuit has yet to rule on the question whether declarations against penal interest, at least in the form of plea allocutions, fall within a well-established hearsay exception, tending to resolve particular cases on the basis of the reliability of the allocution

at issue.[3] In *United States v. Winley*, 638 F.2d 560 (2d Cir.1981), *cert. denied*, 455 U.S. 959, 102 S.Ct. 1472, 71 L.Ed.2d 678 (1982), the Court said that:

> "It is hard to conceive of any admission more incriminating to the maker or surrounded by more safeguards of trustworthiness than a plea of guilty in a federal court, particularly when, as here, the facts elicited in the allocution are buttressed by the testimony of other witnesses." *Id.* at 562.

But *Winley* did not establish a *per se* rule of admissibility. In *United States v. Scopo*, 861 F.2d 339 (2d Cir.1988), *cert. denied*, 490 U.S. 1048, 109 S.Ct. 1957, 104 L.Ed.2d 426 (1989), the Court acknowledged the possibility that the terms or circumstances of a plea agreement might prevent a guilty plea from being against the defendant's interest. While the Circuit in *United States v. Williams*, 927 F.2d 95, upheld the receipt of plea allocutions of four former defendants, it noted that the evidence provided by the allocutions was not particularly damaging to the defense and, accordingly, that any error in its admission was harmless beyond a reasonable doubt. In consequence, the Court sees no reason to determine whether Rule 804(b)(3) is among the hearsay exceptions so well rooted that reliability is inferred provided the allocution here at issue is sufficiently trustworthy in the specific circumstances of this case.

As noted, George Gallego was indicted for murder, conspiracy to commit murder, robbery and conspiracy to commit robbery. He pleaded to the conspiracy to murder charge and did not agree to cooperate with the government. In consequence, while he presumably pleaded in the hope of a more lenient sentence that might have been imposed had he been convicted after trial, a point the defendants probably will seek to make to the jury, George Gallego's plea undeniably subjected him to the risk of a lengthy term of imprisonment. In addition, the allocution was given under oath, and Gallego has been aggressively and quite ably represented. He undoubtedly was well aware that the facts to

which he allocuted at least might be used against his own brother, although he did not implicate his brother by name. Moreover, in view of Alfredo Gallego's previous plea of guilty to charges of robbery and conspiracy to commit robbery with respect to the same incident, George Gallego's allocution is corroborated in the sense that the existence of a conspiracy to commit the robbery in which the driver was killed, albeit not a conspiracy an object of which was murder, has been conceded by Alfredo. In all the circumstances, the Court is satisfied that the allocution carries "particularized guarantees of trustworthiness" and is sufficiently corroborated. *See United States v. One Star*, 979 F.2d 1319, 1322–23 (8th Cir.1992) (upholding reception of out-of-court statement against penal interest by defendant's brother which was directly inculpatory of the accused). It therefore satisfies both the Confrontation Clause and Rule 804(b)(3).

There remains defendants' Rule 403 objection. Rule 403 permits the exclusion of relevant evidence only if the Court finds that the probative value of the evidence "is substantially outweighed by the danger of unfair prejudice ..." That the allocution is likely to be prejudicial—in the sense that George's admission of the existence of a conspiracy and of his provision of a silencer-equipped gun in connection with the robbery to which Alfredo already has pleaded guilty is likely to weigh heavily with the jury—seems clear. That prejudice of this sort does not come within the purview of Rule 403 seems equally clear. "Unfair prejudice," according to the Advisory Committee Note, "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." This evidence tends to suggest a decision on the merits rather than on an improper basis. *See, e.g., United States v. Terzado–Madruga*, 897 F.2d 1099, 1119 (11th Cir.1990) (evidence tending to establish guilt not unfairly prejudicial). In consequence, defendants' Rule 403 objection is overruled.

---

**3.** The Second Circuit sometimes has put this in terms of a requirement of corroborating circumstances when a declaration against penal interest is offered to inculpate the accused. *See, e.g.,*

*United States v. Casamento*, 887 F.2d 1141, 1170 (2d Cir.1989), *cert. denied*, 493 U.S. 1081, 110 S.Ct. 1138, 107 L.Ed.2d 1043 (1990).

The government's motion with respect to the George Gallego allocution is granted.

*Invocation of the Fifth Amendment by Arthur Brown*

■ The government intends to call Arthur Brown, whose attorney has indicated that he will invoke his privilege against self-incrimination if asked certain questions related to his knowledge of the crimes alleged. It proposes to elicit this assertion in the presence of the jury and then to compel Brown's testimony by immunizing him. It seeks a ruling *in limine* as to whether it may elicit Brown's assertion of his privilege in the presence of the jury.

The government argues that having Brown invoke the privilege in the presence of the jury is appropriate. Brown's testimony is said to be important to the prosecution because it will detail incriminating statements allegedly made by defendant Martinez and will corroborate other government witnesses. The government contends that the invocation would demonstrate Brown's bias because he would invoke in light of his having lied to the government previously in an alleged attempt to protect Martinez. The government points out also that Brown would be immunized (and presumably testify) following the invocation, that the government does not propose to parade a number of witnesses before the jury to invoke their constitutional privileges and that the only inference it seeks to draw relates to Brown's bias. Finally, the government would consent to a limiting instruction. *See Rado v. Connecticut,* 607 F.2d 572, 581 (2d Cir.1979), *cert. denied,* 447 U.S. 920, 100 S.Ct. 3009, 65 L.Ed.2d 1112 (1980). The defense contends that Brown should not be forced to invoke his privilege in the presence of the jury.

The principal case relied upon by the government is *United States v. Crozier,* 987 F.2d 893 (2d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 222, 126 L.Ed.2d 177 (1993). The Second Circuit there held that a prosecutor's action in eliciting an invocation of the Fifth Amendment privilege before the jury is error "when the government makes a conscious and flagrant attempt to build its case out of inferences arising from the use of the testimonial privilege" and when "in the circumstances of a given case, inferences from a witness' refusal to answer added critical weight to the prosecution's case in a forum not subject to cross-examination." *Id.* at 901 (quoting *Rado,* 607 F.2d at 581, and *Namet v. United States,* 373 U.S. 179, 186–87, 83 S.Ct. 1151, 1154–55, 10 L.Ed.2d 278 (1963)). In considering such questions, the Court must consider the prosecutor's intent, the number of questions asked, their importance to the government's case, whether the prosecutor draws an inference in closing argument from the refusal to answer, and whether a curative instruction may be given. *Id.*

Here, the government's proposed action would not reflect an effort to build a case out of inferences drawn from use of the privilege. Brown is the only witness known to the Court who would be questioned with knowledge on the part of the government that he would invoke his privilege. While Brown's *testimony* may prove to be an important part of the case against Martinez, an inference from the invocation of his privilege would not. Rather, in view of Brown's alleged lies to the government when he first was questioned and his flight to avoid testifying,[4] the government reasonably apprehends that he will be a difficult witness. It therefore seeks to use the tools at its disposal to demonstrate the extent of his bias. Thus, there is no impropriety in the government's desire to do the best it can in a difficult situation.

On the other hand, it appears that the government's position would not be advanced in any significant way by forcing Brown to invoke before the jury. The defense concedes that the government in any case may elicit from Brown the fact, assuming it comes to pass, that Brown would be testifying under a grant of immunity. It seems entirely appropriate for the government to elicit the fact that Brown declined to testify, even if it may not force invocation of the privilege before the jury or establish that the declination was based on the privilege, absent an order of immunity. It seems appropriate too for the government to show that Brown may not be prosecuted on the basis of his immun-

---

4. Brown fled a short time ago and was appre- hended pursuant to a bench warrant.

ized testimony other than for perjury or making false statements. It would be at liberty to seek to develop the fact that Brown fled in an effort to avoid testifying. The government thus would have a full opportunity to show that Brown is as reluctant a witness as one ordinarily sees and that he previously lied to the government, and to suggest that his actions were motivated by a desire to protect Martinez. In these circumstances, the Court is hard pressed to see that permitting the jury to know that Brown had invoked the Fifth Amendment properly would add anything important to the government's case.

There may be circumstances in which a witness may be compelled to invoke the Fifth Amendment in the presence of the jury. It is equally true, however, that the privilege is widely misunderstood by lay persons and that its invocation often creates an adverse impression in many minds. *See, e.g., United States v. Griffin* 66 F.3d 68, 70–71 (5th Cir. 1995). Limiting instructions may reduce or, indeed, prevent such inappropriate consequences. Nonetheless, invocation in the presence of the jury or, for that matter, allowing the jury to learn that a witness relied upon the privilege, entails risks. Here the risk is that jurors may view that the invocation of the privilege by a friend of Martinez as suggesting that one or both were involved in wrongdoing. In view of the fact that the government appears, at least at this pretrial stage, to be fully capable of demonstrating Brown's bias without forcing him to invoke the privilege before the jury and without telling the jury that the privilege had been invoked, the government's motion for an *in limine* ruling permitting it to do so is denied. At this stage, it appears that the risk of unfair prejudice substantially outweighs what now appears to the Court to be the minimal probative value of the evidence proposed. This ruling, however, is without prejudice to a renewed application at trial or to an application, out of the presence of the jury, before the close of Brown's direct for leave to elicit the fact that he had invoked the privilege.

### The George Gallego Motions

#### Gonzalez Stalking Reports

Defendants Martinez and Alfredo Gallego have joined in George Gallego's *in limine* motion to preclude the government from offering two Postal Service Security Force incident reports (Abrams Aff. Exs. B, C) relating to apparent stalking of Guillermo Gonzalez, the victim, and arguably tieing the stalking to defendants. The government contends that both are admissible pursuant to Rules 803(8), 803(6) and 804(b)(5).

The first exhibit, dated October 19, 1992, is a two page document. The second page is a handwritten statement, said to have been written and signed by Gonzalez, reporting in substance that he had been followed while on his official duties by a car and that he had "spotted two guys," a black male driver and an Hispanic-looking passenger. The first page is a printed incident report form filled out with a typewriter, apparently by a Sergeant Mogenis. It does little more than summarize the handwritten page.

The second document also consists of two pages. The second page contains a handwritten statement, said to be Gonzalez's, reporting that he had noticed a dark blue Toyota Tercel hatchback carrying New York license plate 6261–AXM and a male Hispanic standing nearby who "just stares at me." The first page is another incident report form, this dated December 30, 1992 and also apparently completed by Sergeant Mogenis. It summarizes Gonzalez's handwritten statements, adds a couple of details said to have been related by Gonzalez to Mogenis, and notes that the Postal Service Security Force had determined that the registered owner of the Toyota Tercel was Pamela L. Gallego. Ms. Gallego, the Court understands, is the wife of George Gallego.

The government has agreed to redact the portions of the reports covering Sergeant Mogenis' investigation, but contends that the remainder is admissible.

Rule 803(8) in relevant part creates an exception to the hearsay rule for "[r]ecords, reports, statements, or data compilations in any form, of public offices or agencies, setting forth ... (B) matters observed pursuant

to duty imposed by law as to which matters there was a duty to report, *excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel ...*" (Emphasis added) The defendants contend that these reports are inadmissible under the italicized language of Rule 803(8)(B) and that *United States v. Oates,* 560 F.2d 45 (2d Cir.1977), holds that hearsay excluded thereby may not come in under any other hearsay exception.

*Oates,* as defendants argue, states that "it was the clear intention of Congress [in enacting Rule 803(8)(B) ] to make evaluative and law enforcement reports absolutely inadmissible against defendants in criminal cases." *Id.* at 72. In *United States v. Rosa,* 11 F.3d 315 (2d Cir.1993), however, the Circuit held that the trial court had not erred in receiving, over hearsay objection, an autopsy report prepared by the New York City Medical Examiner's Office. It rejected an *Oates* challenge, holding that the Medical Examiner does not fall within the phrase "law enforcement personnel" and therefore that the report was admissible under Rule 803(8)(B). As Gonzalez was not involved in law enforcement, his handwritten statements are not excludible under *Oates.*

■ The incident report forms are another matter. The government argues that they are admissible under hearsay exceptions other than Rule 803(8)(B) despite *Oates'* facially absolute exclusion of evidence within the law enforcement restriction. It contends that *Oates* has been undermined by *United States v. Yakobov,* 712 F.2d 20 (2d Cir.1983).

*Yakobov* held that *Oates* did not require exclusion of a certificate attesting to the results of a search of public records that was offered under Rule 803(10). To the extent that the case rejected literal application of the *Oates* language to all other hearsay exceptions, it did of course cut back on *Oates'* scope. Nevertheless, the manner in which *Yakobov* did so is instructive. It relied heavily on the fact that "[t]he assertion made by a statement envisaged by Rule 803(10) is ... not a statement that the defendant has failed to perform a given act or that he does not enjoy a certain status. Rather it is a statement that, among the records regularly

kept by a public office or agency, a certain record ... has not been found. This type of statement is an inferential step away from any element of the offense charged. It is not a finding of a material fact but is an assertion from which a finding of such a fact may be made." *Id.* at 26. It went on to note that there is no evaluative component to a Rule 803(10) statement. *Id.*

The incident reports here in issue, considered as a whole, arguably are somewhat closer to *Yakobov* than to *Oates.* None of their contents, as redacted, directly states that either defendant or, for that matter, anyone other than Gonzalez, did or failed to do anything. Certainly the date and pedigree information concerning the time at which Gonzalez made the reports and the identity of the complainant, are uncontroversial and far removed from the elements of the charged offenses, as was the custodian's certificate in *Yakobov.* On the other hand, the additional details attributed to Gonzalez that do not appear in Gonzalez's handwritten statements—i.e., the fact that he observed the Toyota on December 29 and 30—are more troublesome. While they are not matters observed by law enforcement personnel in the sense that Sergeant Mogenis did not see the Toyota, they are such matters in the sense that they report Gonzalez's statements as perceived by Sergeant Mogenis. Hence, they are closer to the sort of matters that Congress sought to exclude via Rule 803(8)(B).

As Sergeant Mogenis' hearsay statements elaborating on Gonzalez's own statement are not within *Yakobov*'s limitation of *Oates,* the defendants' motion to exclude the two reports is granted only to the extent that the portion of the incident report forms appearing under the printed headings "Facts of Incident" shall be redacted. It is denied in all other respects. This ruling does not determine whether the portions as to which defendants' motion is denied are admissible, which will be resolved at trial in light of the government's foundational proof.

*The Handgun Transaction*

■ The defense moves to exclude, or at least defer until the government's rebuttal

case, evidence that George Gallego furnished an automatic gun and ammunition to Martinez in December 1992 for use by Giovanni Rosado. The government contends the evidence is admissible under Rule 404(b).

 Both sides agree that the test for receipt of evidence pursuant to Rule 404(b) is whether the evidence is (1) offered for a purpose other than to prove the defendant's criminal propensity, (2) relevant, and (3) more probative than unfairly prejudicial. *E.g., United States v. Colon,* 880 F.2d 650, 656 (2d Cir.1989). It is clear as well that the trial court may receive "evidence of prior acts to inform the jury of the background of the conspiracy charge, in order to help explain how the illegal relationship between the participants in the crime developed, or to explain the mutual trust that existed between the conspirators." *United States v. Rosa,* 11 F.3d at 333–34. Contrary to defendants' suggestion, the government is not limited to prior acts substantially similar to that charged where, as here, the evidence is offered to prove something other than knowledge or intent.

It is not yet clear whether the evidence in question is relevant to a *disputed* issue. *See, e.g., Colon,* 880 F.2d at 660–61. The appropriate course therefore is to grant defendants' motion, but only to the extent that the government shall advise the Court, out of the presence of the jury, prior to offering this evidence in order to permit a determination in light of the state of the record at that time.

### The Martinez Motions

 The motions addressed here were made by Martinez's new counsel on January 8, 1996, long after the expiration of the time fixed by the Court for pretrial motions. *See* FED.R.CRIM.P. 12(c). The motions are untimely. They are denied also on the merits.

### Evidence of Subornation of Perjury

 The government intends to adduce evidence from Giovanni Rosado, allegedly a member of the conspiracy and now a cooperating witness, that Rosado and Martinez arranged for one Joseph Amato to give false testimony for the purpose of explaining innocently certain damage to Rosado's car that allegedly was sustained during the crime. Martinez moves *in limine* to preclude the government from doing so.

The government offers the disputed evidence in order to establish Martinez's consciousness of guilt, which is an entirely appropriate purpose. *E.g., United States v. Gatto,* 995 F.2d 449, 455 (3d Cir.1993); *see also United States v. Tracy,* 12 F.3d 1186, 1195 (2d Cir.1993); *United States v. Qamar,* 671 F.2d 732 (2d Cir.1982). Nor is the Court persuaded that any unfairly prejudicial effect of the evidence would substantially outweigh its probative value.

The cases relied upon by Martinez are not apposite. *Krulewitch v. United States,* 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1942), the case principally relied upon, held only that evidence of a co-conspirator's effort to persuade a prospective witness to keep silent was not admissible, against hearsay objection, under the co-conspirator exception to the hearsay rule because the co-conspirator's statements were made after the conclusion of the main conspiracy. Moreover, the evidence to be offered here evidently will consist, at least in substantial part, of Martinez's own statements.

Accordingly, the motion to preclude is denied.[5]

### Severance

 Martinez moves also for a separate trial. He bases the motion solely on his expectation that the government will introduce evidence of shocking callousness on the part of Alfredo Gallego, evidence that Alfredo Gallego sat on or next to the body of the murdered driver while he drove the truck to another location. Arguing that Martinez could object to this evidence, which is "less relevant" to the case against him, if Martinez were tried separately, he contends that a joint trial would be unduly prejudicial.

---

**5.** The Court will consider a request for a limiting instruction if made at the time the evidence is offered.

As the Supreme Court recently emphasized, "[t]here is a preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States,* 506 U.S. 534, 537–38, 113 S.Ct. 933, 937, 122 L.Ed.2d 317 (1993). In *Zafiro,* the Court refused "to adopt a bright-line rule, mandating severance whenever codefendants have conflicting defenses." *Id.* at 538, 113 S.Ct. at 937–38. In doing so, it held that "a district court should grant a severance . . . only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539, 113 S.Ct. at 938.

As *Zafiro* acknowledged, a risk warranting severance "might occur" if evidence inadmissible against one defendant, if tried alone, would be admitted against a co-defendant. Here, however, Martinez overstates the risk of prejudice, as the jury should be well able to separate any reaction to Gallego's actions from actions of Martinez. Moreover, it is far from clear that evidence of Gallego's alleged conduct would be inadmissible against Martinez even in a separate trial, particularly in view of the conspiracy charges against him. Indeed, in characterizing the evidence as "less relevant" in a separate trial, Martinez concedes its relevance. In all the circumstances, the Court holds that the risk of prejudice is not sufficient to warrant a severance. *See also, United States v. Aulicino,* 44 F.3d 1102, 1116 (2d Cir.1995). Martinez application therefore is denied. Martinez remains free to seek a limiting instruction if so advised. *See Zafiro,* 506 U.S. at 538–40, 113 S.Ct. at 938.

### Conclusion

The government's motion for an *in limine* determination that the quoted portion of the allocution of George Gallego is admissible in evidence is granted. Its motion for a determination that it may compel Arthur Brown to invoke his privilege against self-incrimination before the jury is denied. Nor shall the government elicit the fact that Brown invoked the privilege before the jury absent further leave of the Court as indicated above.

The motion by defendants to exclude the so-called Gonzalez stalking reports and evidence of the alleged December 1992 handgun transaction involving Rosado is granted to the limited extent described above and otherwise denied.

The motions by Steven Martinez for a severance and to exclude evidence of alleged subornation of perjury are denied in all respects.

SO ORDERED.