**Lyndon LAROUCHE, Jr.,
et al., Petitioner,**

v.

**William WEBSTER, et al., Respondent.**

**No. 75 Civ. 6010 (MJL).**

United States District Court,
S.D. New York.

Sept. 25, 1996.

See also 975 F.Supp. 490.

Mayer Morganroth, New York City, for Plaintiffs.

Mary Jo White, U.S. Attorney, Southern District of New York by Sheila M. Gowan, Assistant U.S. Attorney, New York City, for Defendants.

## OPINION AND ORDER

LOWE, District Judge.

Before the Court are Plaintiffs' objections to Magistrate Judge Grubin's Report and Recommendation, dated August 21, 1995, which denied Plaintiffs' motion, pursuant to Federal Rule of Civil Procedure 56(e) ("Rule 56(e)"), to strike the affidavit of Federal Bureau of Investigation ("FBI") Special Agent Vernon R. Thornton ("Agent Thornton").

For the reasons stated below, Plaintiffs' motion is granted in part and denied in part.

## BACKGROUND

In this action, Plaintiffs seek injunctive and declaratory relief for the FBI's allegedly unconstitutional investigation of them ("Investigation"). Plaintiffs claim that the Investigation began in 1968 and has continued to date. Plaintiffs seek, *inter alia,* to enjoin: (1) the FBI from any further unlawful investigation of them ("Investigation Claim") and (2) the release of FBI files gathered in violation of their constitutional rights.

In May 1985, Defendants moved for summary judgment. Attached to Defendants' motion was the affidavit of Agent Thornton ("Thornton Affidavit I").[1] Plaintiffs responded to Defendants' summary judgment motion by filing a motion pursuant to Rule 56(e) to strike Thornton Affidavit I. *See* Pls.' Mem. of Law in Supp. Mot. to Strike. In further support of their motion for summary judgment, Defendants submitted additional affidavits of Agent Thornton in July 1985 ("Thornton Affidavit II") and in November 1989 ("Thornton Affidavit III").[2] In June 1990, Plaintiffs filed a memorandum in opposition to Defendants' summary judgment motion.

In a Report and Recommendation dated August 21, 1995 ("Report"), Magistrate Judge Grubin recommended that the Court grant Defendants' motion for summary judgment. In that Report, the Magistrate Judge also denied Plaintiffs' motion to strike Agent Thornton's testimony. *See* Report at 36–41.[3] Currently before the Court are Plaintiffs'

objections to the Magistrate Judge's denial of their Rule 56(e) motion.[4] *See* Pls.' Objs. to Report and Recommendation of Magis. J. Grubin ("Pls.' Objs.").

## DISCUSSION

■ This Court reviews the Magistrate Judge's denial of Plaintiffs' motion to strike under the deferential "clearly erroneous" or "contrary to law" standard. Fed.R.Civ.P. 72(a); *St. Paul Fire and Marine Ins. Co. v. Heath Fielding Ins. Broking Ltd.,* No. 91 Civ. 0748, 1996 WL 19028, at *11 (S.D.N.Y. Jan. 17, 1996) (Lowe, J.); *City Builders Supply Co. v. Nat'l Gypsum Co.,* No. 81 Civ. 0203, 1984 WL 3209, at *1 (D.Mass. Sept. 24, 1984).

### I. *Rule 56(e) Motion*

■ Rule 56(e) requires a party moving for summary judgment to submit supporting affidavits based on personal knowledge. Fed.R.Civ.P. 56(e);[5] *Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 643 (2d Cir. 1988). Generally, affiants have personal knowledge to testify about their experiences. *See, e.g., Christian Dior–New York, Inc. v. Koret, Inc.,* 792 F.2d 34, 38 (2d Cir.1986) (corporate officer affiant had requisite personal knowledge under Rule 56(e) to testify about his impressions of contract negotiations). Affiants may also testify to the contents of records they have reviewed in their official capacities. *See Londrigan v. Federal Bureau of Investigation,* 670 F.2d 1164, 1174 (D.C.Cir.1981) (refusing to strike portion of FBI agent's affidavit that described affiant's

---

1. From December 1976 until September 1977, Agent Thornton oversaw the Investigation as FBI Headquarters Supervisor. From 1977 until 1979, Agent Thornton supervised the FBI's domestic security investigations. In 1985, Agent Thornton was an assistant chief of the FBI's records department, where he served in 1989 as its Acting Section Chief.

2. The Court refers to the three affidavits of Agent Thornton collectively as the "Thornton Affidavits."

3. The Magistrate Judge held that Agent Thornton provided the proper foundation for his testimony. *See* Report at 41 ("In sum, most of Plaintiffs' criticism of Thornton's information relates to

matters that are wholly irrelevant to the issue at hand, and the record discloses no basis for striking that information, much less any of Thornton's pertinent averments.").

4. The Magistrate Judge submitted an exhaustive and meticulous Report of 58 pages. The Court finds that only five of Plaintiffs' objections with regard to their Rule 56(e) motion have merit.

5. Rule 56(e) provides, in pertinent part, that: "[an affidavit] shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e).

"own observations upon review of the documents" in FBI's files).

■ Furthermore, under Federal Rule of Evidence 803(10) ("Rule 803(10)"), an affiant may testify to the absence of records where, "after a diligent search of the records regularly kept by a public office or agency, a certain record, entity, report, etc., has not been found." *United States v. Pinto–Mejia*, 720 F.2d 248, 257 (2d Cir.1983) (citation omitted); *United States v. Gallego*, 913 F.Supp. 209, 216 (S.D.N.Y.1996) (same); *see, e.g., United States v. Lee*, 589 F.2d 980, 988 (9th Cir.1979) (upholding admissibility of affidavits by CIA officials, which described absence of records, because affiants "were in position to know what their files contained."), *cert. denied*, 444 U.S. 969, 100 S.Ct. 460, 62 L.Ed.2d 382 (1979). "From such a statement, the *factfinder* may infer that an event that normally would be reflected in the public record did not occur." *Pinto–Mejia*, 720 F.2d at 257 (emphasis added); *see United States v. Robinson*, 544 F.2d 110, 114 (2d Cir.) ("The absence of a record of an event which would ordinarily be recorded gives rise to a legitimate negative inference that the event did not occur."), *cert. denied*, 434 U.S. 1050, 98 S.Ct. 901, 54 L.Ed.2d 803 (1978).

■ Any portion of an affidavit that is not based on personal knowledge should be stricken. *See United States v. Alessi*, 599 F.2d 513, 515 (2d Cir.1979) (striking six paragraphs of affidavit that were not based on personal knowledge while considering rest of affidavit). When ultimate facts and legal conclusions appear in an affidavit, such extraneous material should also be disregarded by the court. *See A.L. Pickens Co., Inc. v. Youngstown Sheet and Tube Co.*, 650 F.2d 118, 121 (6th Cir.1981) (striking portion of accounting director's affidavit that asserted

legal conclusions); *Ball v. Metallurgie Hoboken–Overpelt S.A.*, No. 87 Civ. 191, 1989 WL 87418, at *8 (N.D.N.Y.1989) (indicating that unsworn affidavit included ultimate facts and legal conclusions in violation of Rule 56(e)), *aff'd*, 902 F.2d 194 (2d Cir.), *cert. denied*, 498 U.S. 854, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990); 6 *Moore's Federal Practice* § 56.22[1] (1995) ("[t]he affidavit is no place for ultimate facts and conclusions of law"); *see also Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir.1986) (district court improperly declined to strike conclusory "crucial statement" in affidavit under Rule 56(e)).

## II. *Plaintiffs' Objections to the Rule 56(e) Rulings* [6]

### A. *Thornton Affidavit I*

#### 1. *Paragraph 3* [7]

■ Plaintiffs object to paragraph 3 of Thornton Affidavit I due to Agent Thornton's alleged lack of personal knowledge. *See* Pls.' Objs. at 9. The Court finds that the Magistrate Judge erred to the extent that she refused to strike Agent Thornton's assertion in paragraph 3 of Thornton Affidavit I that "the FBI has never reopened the investigation of [Plaintiffs] under that title, or any pretext title, nor does it have any plans to do so." *See* Thornton Aff. I, ¶ 3. Agent Thornton's positions as supervisor of the FBI's domestic security investigations from 1977 to 1979 and as overseer of the FBI's records department from 1985 to 1989 could not provide him with the personal knowledge necessary to assert the conclusions in this portion of paragraph 3 in Thornton Affidavit I. Moreover, these conclusions do not comply with

---

**6.** Apart from Plaintiffs' objections to specific paragraphs in the Thornton Affidavits, Plaintiffs generally object to the Magistrate Judge's reliance on the allegedly "stale" 10–year old affidavits of Agent Thornton *See* Pls.' Objs. at 8. Plaintiffs argue that the Thornton Affidavits "should be updated by a knowledgeable FBI official today." *Id.* Plaintiffs' argument has no bearing on their motion to strike: only the foundation and admissibility of Agent Thornton's testimony are at issue in their Rule 56(e) motion. The Court therefore finds Plaintiffs' argument

concerning the probative value of Agent Thornton's testimony meritless for purposes of this motion.

**7.** Paragraph 3 of Thornton Affidavit I states: "The FBI's domestic security investigation of [Plaintiffs] was closed in September of 1977, and the FBI has never reopened the investigation of [Plaintiffs] under that title, or any pretext title, nor does it have any plans to do so." *See* Thornton Aff. I, ¶ 3.

the dictates of Rule 803(10).[8]  Accordingly, the Court strikes this portion of Thornton Affidavit I.[9]

■  The Magistrate Judge properly refused to strike Agent Thornton's assertion in paragraph 3 of Thornton Affidavit I that the FBI closed the Investigation in 1977.  *See* Thornton Aff. ¶, 3. The Court is satisfied that Agent Thornton had personal knowledge sufficient to testify about the 1977 closing of the Investigation: Agent Thornton supervised the Investigation from 1976 to its official end in 1977, attaching the 1977 memorandum that closed the Investigation.  *See* Thornton Aff. I, ¶¶ 1, 4. Accordingly, the Magistrate Judge committed no clear error by refusing· to strike this portion of paragraph 3 in Thornton Affidavit I.

### 2.  *Paragraph 7*

■  Plaintiffs argue that the Magistrate Judge erred in refusing to strike Agent Thornton's statement in paragraph 7 of Thornton Affidavit I that "[b]ased on my review of [Plaintiffs'] file ... [Plaintiffs] ... were [never] the subjects of FBI electronic surveillance, nor were any breaking and entering or any other unlawful techniques used in gathering information in the [Investigation]."  *See* Thornton Aff. I, ¶ 7. The Court agrees.  The Second Circuit in *United States v. Yakobov* held that:

> [an] assertion [about the absence of records] envisaged by Rule 803(10) is ... *not* a statement that the defendant has failed to perform a given act or that he does not enjoy a certain status.  Rather it is a statement that, among the records regularly kept by a public office or agency, a certain record ... has not been found. This type of statement is an inferential step away from any element of the offense charged.  It is not a finding of a material fact but is an assertion from which a finding of such a fact may be made.

712 F.2d 20, 26 (2d Cir.1983) (emphasis added), *modified on other grounds*, 728 F.2d 142 (2d Cir.1984).  The *Yakobov* court also noted that there is no evaluative component to a Rule 803(10) statement.  *Id.*

Agent Thornton's testimony at issue here directly states that, based on the nonexistence of certain records, the FBI did not undertake certain activities (*e.g.*, electronic surveillance, "breaking and entering," and other "unlawful" actions).  *See* Thornton Aff. I, ¶ 7. Such statements are precisely the sort of matters that fall outside the purview of 803(10).  Any negative inference about the FBI's actions based on the absence of records should be made by the trier of fact, *not* the agent who reviewed the files.  Moreover, Agent Thornton's testimony makes an improper legal conclusion about the Investigation, namely, whether or not the FBI employed "unlawful techniques."  Thornton Aff. I, ¶ 7; *see, e.g., Youngstown Sheet and Tube Co.*, 650 F.2d at 121.  Accordingly, the Magistrate Judge committed clear error in her refusal to strike paragraph 7 of Thornton Affidavit I.[10]

### 3.  *Paragraphs 8 and 9* [11]

■  The Court also finds that the Magistrate Judge erred by refusing to strike para-

---

**8.**  *See infra* at p. 456 (discussing application of Rule 803(10)).

**9.**  For the reasons stated above, the Court also strikes paragraph 3 of Thornton Affidavit III, which similarly states: "[a]fter September of 1977, the FBI has never reopened the investigation of [Plaintiffs] under that title or any pretext title.  Since the closing of that investigation none of the plaintiffs herein have been the subject of a non-criminal investigation by the FBI." Thornton Aff. III, ¶ 3.

**10.**  For the reasons stated above, the Court strikes the portions of paragraphs 8 and 9 in Thornton Affidavit II, which make similar, impermissible negative inferences based on the absence of FBI records.  *See* Thornton Aff. II, ¶ 8 ("[t]he absence of records pertaining to any electronic surveillance of NCLC members and pertaining to surreptitious entries or other techniques directed against [Plaintiffs] ... indicates that such activities ... did not occur in the [ ][I]nvestigation."); Thornton Aff. II, ¶ 9 ("[t]hus, the absence of records pertaining to disruptive or harassing activities by informants indicates that such activities ... did not occur in the ... [I]nvestigation.").

**11.**  Paragraph 8 of Thornton Affidavit I provides: "The FBI had no part in the preparation of the news articles referred to in ... [P]laintiffs' Second Amended Complaint.  The occurrence of any such activity would have been recorded in the file." *See* Thornton Aff. I, ¶ 8. Paragraph 9 of Thornton Affidavit I states: "Nor did the FBI

graphs 8 and 9 of Thornton Affidavit I. *See* Pls.' Objs. at 8–9. Once again, the negative inference that the FBI did not prepare news articles or supply information to entities based on the absence of such records must be made by the trier of fact, not the reviewing agent. *See Yakobov,* 712 F.2d at 26. Thus, the Court finds that paragraphs 8 and 9 of Thornton Affidavit I should be stricken.

#### 4. *Paragraph 12* [12]

■ The Court finds that the Magistrate Judge erred in refusing to strike the following portion of paragraph 12 of Thornton Affidavit I: "[i]nformants were used in [Plaintiffs'] investigation solely for the purpose of gathering information. None were utilized to harass or disrupt the activities of . . . [Plaintiffs]." Thornton Aff. I, ¶ 12. Agent Thornton, as supervisor of the records department, could not have personal knowledge of the FBI's reason for "using" informants over the course of the Investigation. *Cf. John Hancock Property and Casualty Ins. Co. v. Universale Reinsurance Co. Ltd.,* 147 F.R.D. 40, 44–45 (S.D.N.Y.1993) (company's managing director could not testify to "what [company's] former employees would or

would not have done" during negotiations under Rule 56(e)).

■ The Magistrate Judge also committed clear error by failing to strike the following portion of paragraph 12 in Thornton Affidavit I: "[n]or were the informants instructed or authorized to engage in *illegal* activity or to encourage such activity by other members of [Plaintiffs' organization]." Thornton Aff. I, ¶ 12 (emphasis added). Agent Thornton's testimony improperly asserts a legal conclusion, namely, that the FBI never authorized informants to engage in *illegal* activity. Therefore, the Court finds that the last sentence of paragraph 12 in Thornton Affidavit I should be stricken.[13]

### B. *Thornton Affidavit II*
#### 1. *Paragraph 7*

■ Plaintiffs argue that the Magistrate Judge erred in refusing to strike Agent Thornton's statement in paragraph 7 of Thornton Affidavit II that the FBI's Headquarters file comprises a "complete record of the . . . [I]nvestigation." *See* Pls.' Objs. at 8. The Court agrees. Such testimony improperly asserts a conclusion of ultimate fact. This is especially true in light of Plaintiffs'

---

supply information to private entities for the purpose of disrupting [Plaintiffs] as alleged in . . . the Second Amended Complaint. The occurrence of any such activity would have been recorded in the file." *See* Thornton Aff. I, ¶ 9.

**12.** Paragraph 12 of Thornton Affidavit I states:
With respect to the use of confidential informants, the Agents in the field are required to make all reasonable efforts to assess the reliability of information obtained. One indicia of reliability is whether the informant has supplied reliable information in the past. In other instances, information received from informants may be corroborated by information received from other sources. In all instances, information supplied by informants must be accurately reported in the file. Informants were used in [Plaintiffs'] investigation solely for the purpose of gathering information. None were utilized to harass or disrupt the activities of . . . [Plaintiffs]. Nor were the informants instructed or authorized to engage in illegal activity or to encourage such activity by other members of [Plaintiffs' organization].
Thornton Aff. I, ¶ 12.

**13.** The Court finds that the Magistrate Judge properly refused to strike the remaining portion

of paragraph 12 in Thornton Affidavit I, which states:

With respect to the use of confidential informants, the Agents in the field are required to make all reasonable efforts to assess the reliability of information obtained. One indicia of reliability is whether the informant has supplied reliable information in the past. In other instances, information received from informants may be corroborated by information received from other sources. In all instances, information supplied by informants must be accurately reported in the file.

*See* Thornton Aff. I, ¶ 12. Agent Thornton may testify to the FBI's investigation procedures employed during his tenure as supervisor of the Investigation and earlier FBI practices of which he had personal knowledge. *See Londrigan,* 670 F.2d at 1174 (holding that FBI agent could testify about FBI's investigation procedures employed during his tenure and earlier practices of which he possessed personal knowledge). Additionally, Agent Thornton had personal knowledge of FBI record-keeping practices concerning informant files. The Magistrate Judge therefore properly refused to strike this portion of paragraph 12 in Thornton Affidavit I.

allegations that the FBI destroyed records about its "illegal techniques" under a secret filing system and hid other records in order to avoid FOIA requests. Any inference about the completeness of the FBI files should be made by the trier of fact, not the agent who reviewed the files. Accordingly, the Magistrate Judge committed clear error in her refusal to strike this portion of paragraph 7 in Thornton Affidavit II.

The Court finds Plaintiffs' remaining objections completely meritless and does not discuss them in this opinion.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Plaintiffs' Rule 56(e) motion to strike the Thornton Affidavits.

The Court hereby strikes the following portions of Thornton Affidavit I:

· "the FBI has never reopened the investigation of the NCLC under that title, or any pretext title, nor does it have any plans to do so." Thornton Aff. I, ¶ 3.

· "Based on my review of the NCLC file and FBI records, neither the NCLC nor any of its members were ever the subjects of FBI electronic surveillance, nor were any breaking and entering or any other unlawful techniques used in gathering information in the NCLC investigation. The occurrence of any such activities would have been recorded in the file." Thornton Aff. I, ¶ 7.

· "The FBI had no part in the preparation of the news articles referred to in Paragraphs 31–34, 40, 71–72, 96–100, 102–103 and 118 of plaintiffs' Second Amended Complaint. The occurrence of any such activity would have been recorded in the file." Thornton Aff. I, ¶ 8.

· "Nor did the FBI supply information to private entities for the purpose of disrupting the NCLC as alleged in Paragraphs 42–47 and 68 of the Second Amended Complaint. The occurrence of any such activity would have been recorded in the file." Thornton Aff. I, ¶ 9.

· "Informants were used in the NCLC investigation solely for the purpose of gathering information. None were utilized to harass or disrupt the activities of the NCLC. Nor were the informants instructed or authorized to engage in illegal activity or to encourage such activity by other members of the NCLC." Thornton Aff. I, ¶ 12.

The Court strikes the following portions of Thornton Affidavit II:

· "The Headquarters file of the NCLC investigation is a complete record of the NCLC investigation." Thornton Aff. II, ¶ 7.

· "The absence of records pertaining to any electronic surveillance of NCLC members and pertaining to surreptitious entries or other techniques directed against the NCLC and its members indicates that such activities were never authorized by the FBI and did not occur in the NCLC investigation." Thornton Aff. II, ¶ 8.

· "Thus, the absence of records pertaining to disruptive or harassing activities by informants indicates that such activities were not authorized by the Bureau and did not occur in the NCLC investigation." Thornton Aff. II, ¶ 9.

The Court also strikes the following portion of Thornton Affidavit III:

· "After September of 1977, the FBI has never reopened the investigation of the NCLC under that title or any pretext title. Since the closing of that investigation none of the plaintiffs herein have been the subject of a non-criminal investigation by the FBI." Thornton Aff. III, ¶ 3.

It is So Ordered.