State of NEW YORK By Eliot
SPITZER, Attorney General,
Plaintiff,

v.

SAINT FRANCIS HOSPITAL, Vassar
Brothers Hospital and Mid–Hudson
Health, Defendants.

No. 98 Civ. 0939(WCC).

United States District Court,
S.D. New York.

April 10, 2000.

Eliot Spitzer, Attorney General of State of New York, New York City (Harry First, Bureau Chief, Antitrust Bureau, Susan E. Raitt, Robert L. Hubbard, Gary Weinstein, Asst. Attorneys General, Antitrust Bureau, Jody Boudreault, Intern, Antitrust Bureau, of counsel), for Plaintiff.

Bleakley Platt & Schmidt, White Plains, NY (William F. Harrington, Mary Ann Wirth, of counsel), Buchanan Ingersoll Professional Corp., Pittsburgh, PA (Wendelynne J. Newton, Joy Flowers Conti, James M. Evans, of counsel), for Defendant Saint Francis Hosp.

Winston & Strawn, New York City (Robert S. Fischler, of counsel), Winston & Strawn, Chicago, IL (R. Mark McCareins,

Jeffrey A. Leon, Nicole J. Ottmer, of counsel), Garfunkel, Wild & Travis, P.C., Great Neck, NY (Robert Andrew Wild, Roy Breitenbach, of counsel), for Defendants Vassar Brothers Hosp. and Mid–Hudson Health.

### OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

The State of New York (the "State"), by Attorney General Eliot Spitzer, brings this civil action pursuant to state and federal antitrust laws against defendants St. Francis Hospital ("St.Francis"), Vassar Brothers Hospital ("Vassar") and Mid–Hudson Health ("Mid–Hudson"). The State claims that St. Francis and Vassar, through their agent Mid–Hudson, fixed the rates, terms and conditions for services provided at defendant hospitals and that defendant hospitals wrongfully divided the market for the provision of various services between them, in violation of Section One of the Sherman Act, 15 U.S.C. § 1, and the Donnelly Act, N.Y.Gen.Bus.Law, Art. 22, §§ 340–47. The State seeks injunctive relief, civil penalties of up to one million dollars per violation pursuant to Section 342–a of the Donnelly Act, N.Y.Gen Bus. Law, Art. 22, attorneys' fees and costs of suit. The State and defendants have filed cross-motions for summary judgment on the issue of liability and on defendants' affirmative defenses.

Defendants now move to strike certain portions of the exhibits attached to the State's motion for summary judgment. Specifically, defendants seek to have us strike portions of the affidavits of Charles F. Murphy, currently the director of the state Department of Health's (the "DOH") Division of Health Facility Planning (the "Division"); David A. Kadish, vice president of contracts for Mohawk Valley Physician's Health Plan, Inc. ("MVP"); and Barry Brandow, director of Upstate Contracting Network Development for Empire Blue Cross/Blue Shield ("Empire"); and to strike the affidavit of Dr. Herschel Lessin,

chairman of the board of Taconic IPA, Inc. ("TIPA") in its entirety. Defendants further move to strike portions of the State's Opposition to Defendants' Rule 56.1 Statement. For the reasons that follow, defendants' motions to strike are granted in part and denied in part.

## DISCUSSION

Defendants claim that the affiants lacked personal knowledge as to some of their statements and that portions of their affidavits contain inadmissible hearsay or generalized conclusions. The State maintains that the challenged affidavits are based on the witnesses' own knowledge and are otherwise admissible under the Federal Rules of Evidence.

Rule 56(e) states that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e). Accordingly, a court may "strike portions of an affidavit that are not based upon the affiant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements." *Hollander v. American Cyanamid Co.*, 172 F.3d 192, 198 (2d Cir.1999).

### I. *Defendants' Motion to Strike Portions of the State's Supporting Affidavits*

#### A. *The Murphy Affidavit*

Defendants claim that Murphy's statements as regards the approval process of the Mid–Hudson joint venture from the late 1980s to 1996 when he became the director of Health Facility Planning should be struck because during that time, Murphy was in a "limited accounting type role" with "no authority for the planning, strategy, philosophy, or any other aspects of the non-financial aspect of the ultimate CON approval process." (Def. Mem.Supp.Mot. Strike at 3.) Defendants argue further that Murphy improperly quotes documents to which he "had no contemporaneous connection" and makes unsupported conclusions regarding the defendants' actions and state of mind. (*Id.* at 4–6.) The defendants' motion to strike portions of the Murphy affidavit is granted as to paragraph 54. In all other respects, the motion is denied.

■ Defendants challenge paragraphs 8–12, 14–25, 27, 29–33, 43–46, and 49 on grounds that Murphy lacked personal knowledge in violation of Fed.R.Evid. 602 and that the statements contained inadmissible hearsay in violation of Fed.R.Evid. 802. Rule 602 requires that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony." Fed.R.Evid. 602. A witness's conclusions based on personal observations over time may constitute personal knowledge. *S.E.C. v. Singer*, 786 F.Supp. 1158, 1167 (S.D.N.Y.1992). The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge. *Folio Impressions, Inc. v. Byer California*, 937 F.2d 759, 764 (2d Cir.1991).

Murphy states in his affidavit that from 1979 until he took his current position, he served as the director of the Bureau of Financial Analysis (the "Bureau"), and prior to that, he was a staff analyst in the Bureau and reviewed Certificate of Need ("CON") applications. (Murphy Aff. ¶ 2.) He states that his responsibilities as director of the Bureau included acting as lead staff in matters related to the financial aspects of the DOH's CON process and liaising with the State and Public Health Councils and related Project Review and Establishment Committees. (*Id.* ¶ 3.) In his present position as director of the Division, Murphy states, he manages the DOH's health facility planning functions and develops and implements policy for the Division. (*Id.*) Based on Murphy's twenty-five years of experience with the CON process and his current position as

Division director, Murphy is in a position to testify as to the history of the Mid–Hudson application process.

■ Where a party wishes to have a court consider documents which are not yet part of the court's record, the documents must be attached to and authenticated by an appropriate affidavit and the affiant must be a competent witness through whom the documents could be received into evidence at trial. *Crown Heights Jewish Community Council, Inc. v. Fischer,* 63 F.Supp.2d 231 (E.D.N.Y. 1999). Affiants may testify as to the contents of records they reviewed in their official capacity. *Larouche v. Webster,* 175 F.R.D. 452, 454 (S.D.N.Y.1996). The documents to which Murphy refers in his affidavit are documents with which he reasonably would have become familiar in his official capacity.

■ Murphy's testimony does not contain inadmissible hearsay.[1] Murphy cites documents comprising Mid–Hudson's CON application, (*id.,* Ex. A), in paragraphs 10, 11, 15, 17, 18, 20, 23, 27, 33 and 45; Mid–Hudson's proposed certificate of incorporation, (*id.,* Ex. E), in paragraphs 24, 27 and 45; St. Francis's and Vassar's Joint Planning Committee Approved HVMC Plan, (*id.,* Ex. F), in paragraph 18; a letter from St. Francis executives to the state Public Health Council, (*id.,* Ex. H), in paragraphs 21, 22, 30, 33; and a joint press release from Vassar and St. Francis, (*id.,* Ex. K), in paragraph 31. These documents qualify as admissions by a party-opponent pursuant to Fed.R.Evid. 801(d)(2) and accordingly are not hearsay. The "Trades" document in which certain hospital services are divided between Vassar and St. Francis, (*id.,* Ex. J), is not hearsay, as Murphy does not offer the document for the truth of the matters asserted therein, but only states that the "Trades" document "was neither included nor discussed within the CON establishment application for Mid–Hudson submit-

ted by St. Francis and Vassar Brothers." (*Id.* ¶ 29.)

■ Murphy also references a letter that DOH Executive Deputy Commissioner Dennis Whalen wrote to a third party. (*Id.* ¶¶ 47–48, Ex. M.) To the extent the letter is offered to show that Mid–Hudson was notified of the DOH's position that government approval did not extend to joint negotiating, (*id.* ¶ 49), the letter is not hearsay as it is not "offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). To the extent the letter is offered to show the truth of its contents, (*id.* ¶ 47), the letter is hearsay, but is admissible pursuant to the so-called business records exception pursuant to Fed.R.Evid. 803(6). The primary requirement for admitting documents as business records is that the records have "sufficient indicia of trustworthiness to be considered reliable." *Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.,* 38 F.3d 627, 632 (2d Cir.1994) (internal citations and quotations omitted). According to the State, the DOH often gets requests such as the one to which Whalen's letter refers and "as a regular practice memorializes its response in letters." (Pl. Mem. in Opp. to Defs. Mot. to Strike at 7.) The letter has "sufficient indicia of trustworthiness" and is admissible.

■ Defendants also argue that portions of Murphy's affidavit contain improper opinion testimony. First, defendants complain of Murphy's statements regarding the Health Care Reform Act of 1996 (the "Act") that the Act "replaced DOH regulation of hospital rates for most third party payors with a competitive system," (Murphy Aff. ¶ 39), and that "since January 1, 1997, all hospital rate negotiation has been beyond DOH's regulatory responsibilities; DOH does not oversee, much less actively supervise, the hospitals' rate negotiations," (*id.* ¶ 40). Murphy's opinion regarding the DOH's decreased

---

1. "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove

the truth of the matter asserted." Fed. R.Evid. 801(c).

regulatory authority pursuant to the Act is admissible. Pursuant to Fed.R.Evid. 701, a lay witness's "testimony in the form of opinions or inferences is limited to those opinions which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." As Division director since 1996, Murphy was in a position to perceive the impact of the Act on DOH duties. Even if Murphy were testifying as an expert, his opinion would be admissible. In the Second Circuit, experts may not testify as to applicable legal standards or express legal conclusions. *See Breezy Point Co-op., Inc. v. CIGNA Property and Cas. Co.*, 868 F.Supp. 33, 36 (E.D.N.Y.1994). Here, however, Murphy was not evaluating the legal significance of a fact at issue, but was stating his understanding of a change in DOH's regulatory responsibilities from his perspective as Division director.

■ Finally, defendants object to Murphy's testimony that "[t]he hospitals' refusal to compete on price for all market services has undermined New York's effort to have hospital rates set through competitive market forces," (Murphy Aff. ¶ 54), as improper opinion testimony. In order for an opinion to be admissible pursuant to Fed.R.Evid. 701, the opinion must be both " 'rationally based on' the witness's own perceptions" and " 'helpful' to a clear understanding of the witness's testimony." *United States v. Rea*, 958 F.2d 1206, 1215 (2d Cir.1992) (citing Fed.R.Evid. 701). There is no basis in the Murphy affidavit to support his personal knowledge, even through experience gained over time, regarding the alleged impact of defendants' refusal to cease their joint negotiations on competition. Rule 701's helpfulness requirement is designed to ensure against "opinions which merely tell the jury what result to reach." Fed.R.Evid. 704 advisory committee's note. The defendants' motion to strike this paragraph is granted due to the testimony's lack of helpfulness. In all other respects, defendants' motion to strike the Murphy affidavit is denied.

### B. *The Kadish Affidavit*

■ Defendants move to strike portions of the Kadish affidavit on grounds of hearsay and lack of personal knowledge (paragraphs 6, 19, 24, 25); of hearsay, lack of personal knowledge and improper opinion testimony (paragraphs 13–15, 18, 20, 22, 23, 26, 27, 28, 30); and on grounds of lack of personal knowledge and improper opinion testimony (paragraph 32). Kadish is the vice president of contracts for MVP. As discussed above, the test of admissibility pursuant to Fed.R.Evid. 602 is whether a reasonable trier of fact could believe the witness had personal knowledge of the facts to which he is testifying. *Folio Impressions, Inc.*, 937 F.2d at 764. A reasonable fact-finder could believe that Kadish, as vice president of contracts, had personal knowledge regarding MVP's request for proposals and the proposal it received from Mid–Hudson in response. (Kadish Aff. ¶ 6.) It is also reasonable to assume Kadish would have known the terms of the CON approval. (*Id.* ¶ 15.)

Kadish may testify as to his perception of how St. Francis and Vassar interact, whether jointly or independently, in their dealings with Kadish and MVP. (*Id.* ¶¶ 28, 30.) Furthermore, the opinions Kadish expresses in paragraph 32 are admissible. Kadish states:

> MVP does not want to be forced to conduct joint negotiations on price or other reimbursement terms with St. Francis and Vassar Brothers, which will only result in MVP and its members being forced to pay more for services. Only by allowing MVP to negotiate with the hospitals on an individual basis can MVP continue to ensure its members have access to the full range of services offered by both hospitals at competitive rates. Joint negotiations with St. Francis and Vassar Brothers is simply antithetical to the market-based system now in effect in New York State.

These opinions are (1) rationally based on Kadish's perception as vice president for contracts at MVP and (2) helpful to the

determination of the fact in issue as required by Fed.R.Evid. 701.

Defendants claim that Kadish's statements regarding contact between MVP's outside counsel, counsel for Mid–Hudson and the DOH, (*id.* ¶¶ 13, 14, 18, 19, 23–26), constitute hearsay. Kadish's statement regarding what he wrote to Mid–Hudson is not hearsay and a copy of that letter is attached to the affidavit as an exhibit. (*Id.* ¶ 23.) Kadish's statements regarding the fact that letters were exchanged between MVP, Mid–Hudson and the DOH, (*id.* ¶¶ 19, 24–26), are not hearsay. The letters themselves are attached to the affidavit as exhibits, (*id.*, Exs. D, G, H, I), and are not hearsay because they are relied on only as evidence of what was said, not as evidence of the truth of any statement made. Fed.R.Evid. 801(c). However, Kadish's statements as to the contents of these letters will be disregarded as the letters speak for themselves. Defendants do not contest that the copies of these letters are genuine. In paragraph 27, Kadish references defendants' proposal to MVP. (*Id.*, Ex. C.) The proposal itself is not hearsay, as it is offered as an admission by a party-opponent pursuant to Fed.R.Evid. 801(d)(2).

Kadish's statements regarding the subject matter of correspondence exchanged between MVP's outside counsel and Mid–Hudson, (*id.* ¶¶ 13–14), between MVP's outside counsel and the DOH, (*id.* ¶ 18), and between Mid–Hudson and the DOH, (*id.* ¶ 20), will be disregarded because the letters themselves are the best evidence of their contents. *See* Fed.R.Evid. 1001–03. The letters about which Kadish testifies are not attached to his affidavit and the State has made no showing pursuant to Fed.R.Evid. 1004 that these writings are unavailable.

Defendants also move to strike Kadish's opinion testimony that "[s]uch threatened 'balance billing' directly violated a DOH and Department of Insurance Admonition against balance billing." (*Id.* ¶ 22.) Opinion testimony stating a legal conclusion is not helpful. *See, e.g., Torres v. County of Oakland,* 758 F.2d 147, 150 (6th Cir.1985);

*Hogan v. American Tel. & Tel. Co.,* 812 F.2d 409, 411 (8th Cir.1987). Accordingly, this paragraph will be struck as failing to satisfy the "helpfulness" requirement of Fed.R.Evid. 701.

For the reasons stated above, defendants' motion to strike portions of the Kadish affidavit is granted as to paragraphs 13, 14, 18, 20 and 22. In all other respects, defendants' motion is denied.

### C. *The Brandow Affidavit*

Defendants also move to strike portions of the affidavit of Barry Brandow, director of Empire, claiming that certain statements lack foundation and contain hearsay and improper opinions. This motion is denied.

First, in light of his position at Empire and his twenty-five years of service with the company, (Brandow Aff. ¶ 1), Brandow could reasonably be expected to have first-hand knowledge of Empire's business as described in paragraph 2 of his affidavit. He was also in a position to have seen Mid–Hudson's proposal in response to Empire's request for proposals ("RFPs"). (*Id.* ¶ 9.) The cover sheet to that proposal, (*id.* Ex. A), is admissible, as it is offered as an admission by a party-opponent pursuant to Fed.R.Evid. 801(d)(2).

It is also reasonable to assume that Brandow would have first-hand knowledge of the prices the hospitals quoted in response to Empire's RFP. (*Id.* ¶ 10.) Brandow also may testify as to the computer model his department built during Empire's negotiation with the hospitals to compare the per diem rates the hospitals offered against state-regulated prices, (*id.* ¶ 14), and to the fact his office had signed letters of agreement with "all but five or six hospitals in my 18–county region. (The holdouts included St. Francis and Vassar Brothers.)" (*Id.* ¶ 18.) Likewise, Brandow was in a position to know firsthand how St. Francis and Vassar's proposed rates compared to those of other hospitals with whom Brandow was negotiating and to opine as to why some hospi-

tals had higher rates than St. Francis and Vassar. (*Id.* ¶¶ 20, 24, 25.) Brandow is also in a position to testify as to how St. Francis and Vassar act, whether jointly or separately, in complying with the letters of agreement they signed with Empire. (*Id.* ¶ 27.) In most of these instances, Brandow is testifying as a fact witness and relating what he perceived during the course of Empire's negotiations with Vassar and St. Francis and in their continuing relationship. Accordingly, his statements meet the personal knowledge requirement of Fed.R.Evid. 602. To the extent he gives an opinion, Brandow's opinion is rationally based on his perception and is helpful to the trier of fact as required by Fed.R.Evid. 701.

### D. *The Lessin Affidavit*

██ Defendants also move to strike the affidavit of Dr. Herschel Lessin, chairman of the board of TIPA in its entirety on grounds of hearsay and lack of personal knowledge. This motion is denied.

The Court has reviewed the affidavit and has found that, while certain portions of the affidavit are unduly argumentative, the affidavit should not be stricken in its entirety. TIPA has a risk-sharing arrangement with MVP regarding hospital costs and other expenses. (Lessin Aff. ¶ 3.) The affidavit states Dr. Lessin's perception of the impact a joint negotiating strategy by hospitals may have upon TIPA's costs. (*Id.* ¶¶ 4–6.) This opinion testimony is rationally based upon Dr. Lessin's experience as chairman of the board of TIPA. To the extent Dr. Lessin's affidavit offers generalized conclusions and legal arguments, the Court will not mistake advocacy for assertions of fact based upon personal knowledge in evaluating Dr. Lessin's statements. *See Gittes v. GMIS, Inc.*, No. 95 Civ. 2296(BSJ), 1999 WL 500144 at *7 (S.D.N.Y. July 15, 1999).

### II. *Defendants' Opposition to the State's Rule 56.1 Statement*

Defendants move to strike portions of the State's Opposition to Defendants' Rule 56.1 Statement (the "State's Opposition Statement") on grounds the State has failed to meet the requirements of Local Rule 56.1. Defendants' contention has no merit. Local Rule 56.1 states in pertinent part that:

(a) Upon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried....

(b) The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried.

(c) All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to served by the opposing party.

(d) Each statement of material fact by a movant or opponent must be followed by citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56(e).

██ The State's Opposition Statement satisfies the requirements of Local Rule 56.1. First, a "proper 56.1 statement submitted by a non-movant should consist of a paragraph-by-paragraph response to the movant's 56.1 statement, much like an answer to a complaint." *Rodriguez v. Schneider*, 1999 WL 459813 at 1 (June 29, 1999). The State has listed the paragraphs and statements within paragraphs as to which the State concedes there are no genuine issues to be tried. (Pl.Opp. Statement at 1–9.) Second, where a non-movant asserts that a fact claimed to be undisputed by the moving party is actually in dispute, the non-movant must support its contention with evidence from the record. *See Rodriguez*, 1999 WL 459813 at 1. The State has met this requirement also,

supporting its refutations of defendants' statements with citations to the record. (Pl. Opp. Statement at 1–9.)

The State also submitted a Supplemental Statement Under Local Rule 56.1 in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment dated November 10, 1999 (the "Supplemental Statement") in which the State further supports its contentions with citations to the record and to legal authority. The Supplemental Statement will be accepted despite its untimely submission. Consideration of the Supplemental Statement will not prejudice defendants, as the Supplemental Statement "is the same in all material respects as their original statement" except that it adds further support for the State's contentions. *Frooks v. Town of Cortlandt*, 997 F.Supp. 438, 445 n. 1 (S.D.N.Y.1998) (Conner, Senior J.). Accordingly, the State has met the requirements of Local Rule 56.1 and defendants' motion to strike the State's Opposition Statement is denied.

## CONCLUSION

For the foregoing reasons, the Court: (1) grants defendants' motion to strike portions of the Murphy affidavit as to paragraph 54 and in all other respects, denies the motion; (2) grants defendants' motion to strike portions of the Kadish affidavit as to paragraphs 13, 14, 18, 20 and 22 and in all other respects, denies the motion; (3) denies defendants' motion to strike portions of the Brandow affidavit; (4) denies defendants' motion to strike the Lessin affidavit; and (5) denies defendants' motion to strike portions of the State's Opposition Statement.

SO ORDERED.