**GEMOLOGICAL INSTITUTE OF AMERICA, INC., Plaintiff,**

v.

**ZARIAN CO., LTD, et al., Defendants.**

**No. 03 CIV.4119RLE.**

United States District Court, S.D. New York.

Dec. 22, 2004.

Michael S. Fischman, Phillips Nizer LLP, New York City, for Plaintiff.

Benjamin A. Fleischner, Jonathan S. Chernow, White, Fleischner & Fino, L.L.P., Robert I. Bodian, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., New York City, for Defendants.

### OPINION & ORDER

ELLIS, United States Magistrate Judge.

### I. INTRODUCTION

Plaintiff Gemological Institute of America, Inc., ("GIA") is a corporation engaged in the business of analyzing and grading diamonds and gemstones. It has institut-ed this interpleader proceeding to resolve a chattel ownership dispute between defendants Zarian Co., Ltd. ("Zarian") and S.B. Diamond Corporation ("S.B."). Both defendants claim rightful ownership of a diamond held by GIA, and demand its return. In addition to resolving ownership, GIA seeks reimbursement for the costs and fees of this action. S.B. has counterclaimed against GIA for damages, representing the interest accrued to the diamond. Zarian now moves for summary judgment. For the reasons which follow, Zarian's motion is **GRANTED**, in part, and **DENIED**, in part.

### II. BACKGROUND

#### A. Zarian's Version of Events

##### 1. Transactions in Hong Kong

On June 20, 2000, GIA issued a diamond grading report for an 11.60 carat diamond stone. Affidavit of Gregory Stames, dated November 26, 2004 ("Stames Aff."), Exh. B. On or about May 5, 2001, Zarian, an international jewelry manufacturer, entered into a consignment and bailment of the diamond with fellow international jeweler, Dehres International Ltd. ("Dehres"), in Hong Kong, People's Republic of China. The diamond was set in a ring mounting with 111 diamond pieces for a total weight of 12.20 carats. Stames Aff. at ¶¶ 2–3. The ring was valued at six hundred and ninety-eight thousand dollars ($698,000). *Id.*, Exh. C.

On May 11, 2001, Pun Lin, a.k.a Candy Pun of Zarian's Hong Kong office arrived at Dehres's Hong Kong office and received a consignment of jewelry that included the diamond. Affidavit of Pun Lin, dated January 13, 2004, at ¶ 5. After signing the receipt and bailment notes, the jewelry was placed in a steel box and delivered by Pun Lin to Malca–Amit, an air-freight service. *Id.* at ¶ 7.

## 2. Transactions in Dubai

On May 10, 2001, Haik Zarian, co-founder and co-owner of Zarian, arrived in Dubai, United Arab Emirates, to attend a jewelry show at the international trade center. Affidavit of Haik Zarian, dated November 26, 2003 ("Haik Zarian Aff.") at ¶ 2. On May 14, 2001, Haik Zarian received a jewelry package which included the diamond. *Id.* at ¶ 3. On May 16, 2001, Zarian's booth at the International Jewelry Fair was robbed. *Id.* at ¶ 4. Among the items stolen were three diamond rings, one of which is the diamond at issue in this case, and a necklace consisting of twenty emerald cut diamonds of 69.35 carats and 30.32 carats worth of small baguette diamonds. *Id.* at ¶ 6.

After the robbery, Haik Zarian made a report to the Dubai police. The arabic-language report, as translated for Haik Zarian, described "a Cartier necklace made of diamonds and platinum, with three square shape precious stones (solitaire) valued at $1,600,000." Haik Zarian Aff., Exh. C. On May 17, 2001, Gregory Stames ("Stames"), president of Zarian, reported the theft of a Cartier necklace and three diamond rings to Zarian's insurer. Stames Aff., Exh. G.

On June 17, 2001, Stames asked the Dubai Chairman of Port and Customs to waive customs taxes on the stolen diamond, the two other stolen rings, and the necklace. Stames Aff. at ¶ 13. The government agreed to waive the taxes. *Id.* On June 14, 2001, Robert Lyons of Zarian faxed a letter to Joe Graf of GIA in New York reporting the theft of the diamond from the fair. Complaint at ¶ 1.

## B. S.B.'s Version of Events

### 1. Transactions in New York

In October of 2001, Benyamin Siyance ("Siyance") of S.B., a New York corporation, arranged for his Israeli associate, Michael Sianes ("Sianes"), to purchase precious stones for S.B. Affidavit of Benyamin Siyance, dated January 7, 2004 ("Siyance Aff."), at ¶ 3; Affidavit of Michael Sianes at ¶ 2. S.B. is a regular purchaser and seller of diamonds. Siyance Aff. at ¶ 2. Sianes purchased a diamond from Zevulun Shemesh ("Shemesh"), vice president of the Israel Precious Stones and Diamond Exchange and owner of Zevulun Shemesh Company, an Israel-based diamond company. Memorandum Of Law in Opposition to the Motion Of Zarian Co., Ltd., For Summary Judgment on its Cross–Claim Against S.B. Diamond Corp. at ¶ 2–3 ("Mem. in Opp.").

On October 29, 2001, S.B. sent the diamond to GIA's New York office for grading. The diamond was not mounted in a ring. GIA presented the diamond to three gemologists who independently confirmed that S.B.'s diamond was the same diamond reported stolen by Zarian. Although the diamond was slightly re-cut, GIA had its own internal grading reports that matched the diamond's immutable, "fingerprint like" characteristics. GIA refused to return the diamond to S.B., and instituted this action. Joint Pre–Trial statement at ¶ 5.

### 2. Transaction in Dubai

S.B. presented its own translation of the Dubai police report which states that "a diamond platinum necklace, Cartier type with three precious stones (diamond) square shaped, was stolen . . . the estimated price of the necklace is $1,600,000 U.S. dollars." Siyance Aff., Exh. C.

## III. DISCUSSION

### A. Summary Judgment Standards

█ In evaluating a motion under Rule 56, Federal Rules of Civil Procedure, the

Court reviews the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, to show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Furthermore, a pre-discovery motion, as in this case, should be viewed with significant caution. *See Serendip LLC v. Franchise Pictures LLC*, 2000 WL 1277370, at *8 (S.D.N.Y. Sept. 7, 2000). However, a non-moving party cannot rely on conclusory allegations or speculation, and "may not rest on the pleadings[,] but must further set forth specific facts in the affidavits, depositions, answers to interrogatories, or admissions showing a genuine issue exists for trial." *Cifarelli v. Village of Babylon*, 93 F.3d 47, 51 (2d Cir.1996). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Furthermore, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–250, 106 S.Ct. 2505 (citations omitted).

## B. Is the Diamond Held by GIA a Stolen Diamond?

### 1. The identity of the diamond as a nondisputed material fact

In the parties' joint pre-trial statement, S.B. claimed that the diamond's identity was a material disputed fact. Joint Pre–Trial Statement at ¶ 4. S.B. has subsequently agreed not to allege that the diamond in GIA's possession is not the same stone Zarian reported to GIA as stolen. Affidavit of Jonathan S. Chernow, dated December 1, 2003 ("Chernow Aff."), Exh. 11. Thus, the diamond's identity has been established and is no longer a dispute before the Court.

### 2. The disputed material facts surrounding the diamond's alleged theft

■ Zarian alleges that the diamond was stolen when the booth at the International Jewelry Fair was robbed. Memorandum of Law in Support of Zarian's Motion for Summary Judgment on its Cross–Claim against S.B. ("Mem. in Support"), at 4. Zarian also submitted specific evidence of the theft, including a police report, pictures, and affidavits. Notice of Motion for Summary Judgment ("Motion"), Exh. G (police report) & Exh. E (pictures); Stames Aff. at ¶ 9; Haik Zarian Aff., Exh. 3, at ¶ 4. In reply, Siyance has alleged that "based on my experience it is possible Zarian's story [that the diamond was consigned and stolen before it could be sold] is false." Siyance Aff. at ¶ 9. However, Siyance's speculation is inadequate to meet S.B.'s burden under Rule 56. S.B. must do more than state a belief that facts may be false. It must present contradictory evidence. For example, S.B. attacks the circumstances of the consignment as being highly dubious, asserting that the consignment fails to meet industry standards and does not conform to the UCC. While S.B. submits affidavits in support of its contentions, Siyance Aff. ¶ 7; Affidavit of Richard Lefkowitz, dated January 6, 2004, at ¶ 5, it failed to present an affiant with a basis for personal knowledge or expertise, or other evidence to contest Zarian's claim that Hong Kong's industry practice conforms to the UCC. Reply Memorandum of Law in Response to S.B.'s Opposition to Zarian's Motion for Summary Judgment on its Cross–Claim Against S.B. ("Repl.Mem."), at 8–9; Affidavit of Ephraim Zion, dated January 14, 2004, at ¶¶ 3—6.

S.B. also argues that there is a discrepancy in the translation involving the reported theft. S.B.'s translation states that "a diamond platinum necklace, Cartier type with three precious stones (diamond) square shaped, was stolen ... the estimated price of the necklace is $1,600,000 U.S. dollars." Siyance Aff., Exh. C. This contrasts with Zarian's translation, which states that the theft included "a Cartier necklace made of diamonds and platinum, with three square shape precious stones (solitaire), valued at U$D 1,600,000." Motion, Exh. D. S.B. argues that its translation indicates that a necklace of three stones was reported stolen, while Zarian's indicates that a necklace with multiple diamonds, plus three square diamond rings, were stolen. This alleged discrepancy depends largely on the absence of a comma, and simply does not suffice to raise a material question with respect to the diamond's theft. Accordingly, summary judgment on this issue is **GRANTED,** and it is decided as a matter of law that the diamond in question was stolen.

### C. Choice of Law and the Location of the Diamond at the Time of Sale to S.B.

■ In a diversity action, a federal court applies the choice of law rules of the state in which it sits, in this case, New York. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Spanierman Gallery v. Merritt,* 2004 WL 1781006, at *3 (S.D.N.Y. Aug. 10, 2004). New York choice of law mandates that questions regarding the "validity of a transfer of personal property [be] governed by the law where the property is located at the time of the transfer." *Wertheimer v. Cirker's Hayes Storage Warehouse, Inc.,* 2001 WL 1657237 (N.Y.Sup. Sept. 28, 2001)(replevin action). Furthermore, where the theft occurs is irrelevant; what is important is where the

sale or transfer of the stolen property took place. *See DeWeerth v. Baldinger,* 658 F.Supp. 688, 693 (S.D.N.Y.1987); *Kunstsammlungen Zu Weimar v. Elicofon,* 536 F.Supp. 829, 846 (E.D.N.Y.1981). Therefore, where the sale of the diamond occurred is material in this case because it will determine which law on purchases applies. Zarian claims the sale occurred in New York, while S.B. claims it occurred in Israel.

■ Under New York Law, a purchaser of personal property cannot acquire good title from a seller who stole the property. *See Kunstsammlungen,* 536 F.Supp. at 846; *Candela v. Port Motors Inc.,* 208 A.D.2d 486, 617 N.Y.S.2d 49, 50 (2d Dep't 1994) (finding that purchasing a car from a successor in interest to a car thief results in purchaser receiving void title). In contrast, S.B. alleges that there are some circumstances under Israeli law where a good faith purchaser can acquire good title from a person who had defective title. Mem. in Opp., at 5. S.B., however, fails to submit any affidavits on the workings of Israeli law or on what circumstances might warrant a finding in its favor. In the absence of an appropriate affidavit, the Court can only speculate as to whether there are any material facts in dispute on the choice of law issue.

Nonetheless, Zarian claims that S.B. purchased and received the diamond in New York State. Zarian's statement pursuant to local Rule 56.1 ("Zarian 56.1 statement"), ¶ 18; Mem. in Support, at 5. Therefore, application of New York's choice of law rules require that New York law govern this case. Mem. in Support, at 5; Zarian 56.1 statement, at ¶ 18. However, Zarian's evidence is not conclusive. The invoice which Zarian cites to support its claim does not prove that the diamond was purchased in New York, but it only dem-

onstrates that there was an October 15, 2001 sale to S.B. Diamond Corp., which is listed with a New York address. Chernow Aff., Exh. 7. That S.B. is based in New York does not create an indisputable fact that the sale of the diamond occurred in New York. It is certainly reasonable for a jury to assume that a company can make a purchase in a state other than the one in which it is based.

Conversely, S.B. replied that the sale of the diamond occurred in Israel, thus Israeli law applies. Mem. in Opp., at 5. S.B. states that "[it] purchased the Diamond ... from a respected and reputable diamond dealer in Israel." Mem. in Opp., at 6. However, the affidavit that S.B. cites to support its claim does not demonstrate that the diamond was purchased in Israel, rather it only states that the purchaser, who is based in Israel, met with a dealer, whose company is based in Israel. Siyance Aff. at ¶ 3. That the purchaser and dealer are based in Israel does not create an indisputable fact that the two actually met in Israel at the time of the sale. Furthermore, Mr. Siyance, the affiant, had no first-hand knowledge of the actual sale. Rather, according to Siyance's own words, he only *"arranged* for SB's associate ... to purchase stones for SB." *Id.* (emphasis added).

▆▆▆ The law on affidavits is clear. Rule 56(e) of the Federal Rules of Civil Procedure mandates that "opposing affidavits shall be made on personal knowledge." "Generally, affiants have personal knowledge to testify about their experiences ... [and] any portion of an affidavit not based on personal knowledge should be stricken." *Larouche v. Webster,* 175 F.R.D. 452, 454–455 (S.D.N.Y.1996). Clearly, S.B. cannot rely on an affidavit to demonstrate where the sale occurred when the affiant had no first-hand knowledge of the sale itself.

Nonetheless, S.B. submitted a supplementary affidavit from Michael Sianes, an S.B. associate, in which Sianes states that on October 15, 2001, he purchased the diamond in Israel from Zevulun Shemesh on behalf of S.B. Sianes Aff. ¶ 2. Moreover, Sianes's affidavit indicates that Sianes bought the diamond in good faith, stating that Shemesh represented to him that he had "good and valid title to the stone." *Id.* at ¶ 3. S.B. produced the Sianes Affidavit after party submissions were completed, however, the Court, in its discretion, accepts it. However, all that the Sianes affidavit demonstrates is that a dispute of material fact exists with respect to where the sale of the diamond occurred. Accordingly, summary judgment on this issue is **DENIED**.

Zarian goes on to assert that since New York law applies to the instant action, S.B. cannot have good title, even if it demonstrates that it purchased the diamond in good faith, because a thief cannot transfer good title under New York law. Notably, Zarian also disputes whether or not S.B. was a good faith purchaser for value. Repl. Mem., at 5–6. However, the Court cannot discuss applications of New York law when it is far from clear whether or not New York law applies here. New York's choice of law rule cannot be decided without first establishing the location of where S.B. purchased the diamond in question.

## IV. CONCLUSION

There is no dispute that the diamond Zarian reported to GIA as being stolen is the same diamond at issue in this case. Additionally, S.B. has failed to controvert Zarian's claim that the diamond in question was stolen at the International Jewelry Fair. However, there is a dispute of material fact regarding where the sale of the diamond occurred. Accordingly, Zari-

an's summary judgment motion is **GRANTED** with respect to the fact that the diamond was stolen, but **DENIED** with respect to the location of where S.B. purchased the diamond, and consequently, the choice of law issue will not be decided at this time. The parties shall have until March 31, 2005, to complete discovery.